RANCOUR v THE DETROIT EDISON COMPANY

Docket Nos. 78056, 78532. Submitted July 1, 1985, at Detroit.—Decided April 7, 1986. Leave to appeal applied for.

Plaintiff, Oscar R. Rancour, was hired as an automobile mechanic by defendant, The Detroit Edison Company, in 1975. In July and in October of 1978, plaintiff suffered two separate work-related knee injuries, which required surgery on two different occasions in 1979. Plaintiff was classified temporarily disabled by defendant, qualifying him for temporary light duty assignments. Plaintiff returned to his normal duties in October or November of 1979 but underwent a third operation in March of 1980. Again, plaintiff was classified as temporarily disabled but at that time there was no light duty work available. Until May or June of 1980, plaintiff received full salary and benefits in the form of workers' compensation benefits plus a company supplement. After that, plaintiff received workers' compensation benefits only. In August of 1980, plaintiff was classified permanently disabled and it is undisputed that he was completely unable to perform the duties of an automotive mechanic. While it was defendant's policy to place temporarily disabled employees in light duty assignments where available, permanently disabled employees did not qualify for such temporary assignments. Pursuant to the terms of a collective bargaining agreement negotiated between defendant and plaintiff's union and pursuant to company policy, the superintendent of the motor transportation division looked within his division for another position to which plaintiff might be transferred. Upon learning that nothing was available in his immediate division, the superintendent sent a memo dated August 28, 1980, to the employment director requesting a company-wide search for available positions compatible with plaintiff's limitation. Only one job opening for a position referred to as "Special Clerk-Trombley Warehouse" matched defendant's physical qualifica-

REFERENCES

Am Jur 2d, Civil Rights §§ 138, 248.5, 446-448.

Construction and effect of state legislation forbidding job discrimination on account of physical handicap. 90 ALR3d 393.

See also the annotations in the ALR3d/4th Quick Index under Disability.

tions but an ad hoc committee formed solely to consider plaintiff's placement in this position decided that he did not meet two of the five requisite qualifications. Specifically, the committee concluded that plaintiff did not possess the ability to "communicate effectively both orally and in writing" or the ability to "work effectively" with personnel at different levels throughout the company. On September 17, 1980, plaintiff was informed that there were no available positions and, because he was unable to perform his job as automotive mechanic, his employment relationship with defendant was terminated. Plaintiff filed a grievance with his union which he eventually pursued to arbitration without success. It was during these grievance proceedings that plaintiff first learned of the Special Clerk-Trombley Warehouse opening. Plaintiff filed an action in the Wayne Circuit Court under the Handicappers' Civil Rights Act and, after a jury trial, obtained a judgment of $115,000, plus interest of $51,770, Roland L. Olzark, J. Plaintiff moved for reinstatement as an employee and attorney fees. The trial court denied reinstatement and refused to award attorney fees under the act, although attorney fees of $3,750 were awarded under the mediation penalty provision of Wayne Circuit Court Rule 403.16. Defendant appealed the verdict as of right and plaintiff cross-appealed the order denying reinstatement and attorney fees under the act. Plaintiff also appealed separately and the appeals were consolidated by the Court of Appeals. *Held:*

1. The duty of an employer to accommodate handicapped employees under the handicappers' act is limited to (1) the alteration of physical structures to allow access to the place of employment and (2) the modification of peripheral duties to allow job performance. The duty to accommodate imposed under the handicappers' act does not extend to new job placement or vocational rehabilitation efforts.

2. A plaintiff alleging a cause of action under the Handicappers' Civil Rights Act, where the defendant asserts a nondiscriminatory reason for its decision, must prove that the proffered reason was merely a pretext. There was sufficient evidence at trial from which the jury could conclude that defendant's proffered reason for not giving defendant the Special Clerk-Trombley Warehouse position was a pretext.

3. The general verdict of the jury made it impossible to determine whether the verdict was based on the failure to accommodate theory or on the discrimination theory. Thus, remand for a new trial is necessary.

4. The Handicappers' Civil Rights Act authorizes the issuance

of injunctive relief as well as the recovery of attorney fees. However, a prevailing civil rights plaintiff is not automatically entitled to either of these forms of relief. The court did not abuse its decision in awarding attorney fees. Reinstatement is a matter of equity and is reviewed *de novo*. The Court of Appeals was not convinced that it would have reached a contrary result had it been presented with the issue.

Reversed and remanded.

1. CIVIL RIGHTS — HANDICAPPERS' CIVIL RIGHTS ACT — DUTY OF ACCOMMODATION.

The duty of an employer to accommodate handicapped employees under the handicappers' act is limited to (1) the alteration of physical structures to allow access to the place of employment and (2) the modification of peripheral duties to allow job performance; the duty to accommodate imposed under the handicappers' act does not extend to new job placement or vocational rehabilitation efforts.

2. CIVIL RIGHTS — HANDICAPPERS' CIVIL RIGHTS ACT — BURDEN OF PROOF.

A plaintiff alleging a cause of action under the Handicappers' Civil Rights Act, where the defendant asserts a nondiscriminatory reason for its decision, must prove that the proffered reason was merely a pretext.

3. CIVIL RIGHTS — HANDICAPPERS' CIVIL RIGHTS ACT — INJUNCTIVE RELIEF — ATTORNEY FEES.

The Handicappers' Civil Rights Act authorizes the issuance of injunctive relief as well as the recovery of attorney fees; however, a prevailing civil rights plaintiff is not automatically entitled to either of these forms of relief (MCL 37.1606, subds [1] and [3]; MSA 3.550[606], subds [1] and [3]).

*Kelman, Loria, Downing, Schneider & Simpson* (by *Michael L. Pitt),* for plaintiff.

*Stanley H. Slazinski* and *Jessiephine W. Summerville,* for defendant.

Before: BEASLEY, P.J., and J. H. GILLIS and M. J. KELLY, JJ.

M. J. KELLY, J. This case presents a first impression issue regarding the nature and extent of an

employer's duty to accommodate a handicapped employee under the Michigan Handicappers' Civil Rights Act, MCL 37.1101 *et seq.;* MSA 3.550(101) *et seq.*

We must decide whether the act imposes a duty upon employers to accommodate employees who have become permanently disabled in the course of their employment and can no longer perform the job for which they were hired by (1) placing or attempting to place injured employees in jobs compatible with their limitations, (2) assigning injured employees to other jobs on conditional or probationary terms where necessary, and/or (3) maintaining injured employees on employment status even where no work is available to enable them to apply as "insiders" for positions that may become available in the future. For reasons stated below, we hold that the duty of an employer to accommodate handicapped employees under the handicappers' act is limited to (1) the alteration of physical structures to allow access to the place of employment and (2) the modification of peripheral duties to allow job performance. The duty to accommodate imposed under the handicappers' act does not extend to new job placement and/or vocational rehabilitation efforts.

### FACTS

Plaintiff was hired as an automotive mechanic by Detroit Edison in 1975. In July and in October of 1978, plaintiff suffered two separate work-related knee injuries, which required surgery on two different occasions in 1979. As necessitated by the injuries and operations, plaintiff was classified temporarily disabled, qualifying him for temporary light duty assignments. Plaintiff returned to his normal duties in October or November of 1979 but

underwent a third operation in March of 1980. Again, plaintiff was classified as temporarily disabled but at that time there was no light duty work available. Until May or June of 1980, plaintiff received full salary and benefits in the form of workers' compensation benefits plus a company supplement. After that, plaintiff received workers' compensation benefits only.

In August of 1980, plaintiff was classified permanently disabled and it is undisputed that he was completely unable to perform the duties of an automotive mechanic. While it was defendant's policy to place temporarily disabled employees in light duty assignments where available, permanently disabled employees did not qualify for such temporary assignments. Pursuant to the terms of a collective bargaining agreement negotiated between defendant and plaintiff's union and pursuant to company policy, the superintendent of the motor transportation division looked within his division for another position to which plaintiff might be transferred. Upon learning that nothing was available in his immediate division, the superintendent sent a memo dated August 28, 1980, to the employment director requesting a company-wide search for available positions compatible with plaintiff's limitation. Only one job opening for a position referred to as "Special Clerk-Trombley Warehouse" matched defendant's physical qualifications but an ad hoc committee formed solely to consider plaintiff's placement in this position decided that he did not meet two of the five requisite qualifications. Specifically, the committee concluded that plaintiff did not possess the ability to "communicate effectively both orally and in writing" or the ability to "work effectively" with personnel at different levels throughout the company. On September 17, 1980, plaintiff was informed

that there were no available positions and, because he was unable to perform his job as automotive mechanic, his employment relationship with defendant was terminated.

Plaintiff filed a grievance with this union which he eventually pursued to arbitration with no success. It was during these grievance proceedings that plaintiff first learned of the Special Clerk-Trombley Warehouse opening. Plaintiff subsequently filed this circuit court action under the handicappers' act and, after a four-day jury trial, obtained a judgment of $115,000 in damages, plus an interest award of $51,770. Plaintiff moved for reinstatement as an employee and for attorney fees. The trial court denied reinstatement and refused to award attorney fees under the act, although attorney fees of $3,750 were awarded under the mediation penalty provision of Wayne County Circuit Court Rule 403.16. Defendant appeals the verdict as of right and plaintiff cross-appeals the order denying reinstatement and attorney fees under the act.

I

Defendant's primary argument is that the jury verdict rendered in this case is not supported by law. Our review of the record, however, convinces us that plaintiff proceeded at trial on two distinct theories of recovery, only one of which is not supported by any legal basis. Plaintiff generally argued that defendant violated the accommodations provision of the handicappers' act by failing to make reasonable efforts at placing plaintiff in another position within the company. According to plaintiff, reasonable efforts would have included assigning plaintiff to the Special Clerk-Trombley Warehouse job on a probationary basis or maintaining plaintiff's employment status in order that

he might apply for future openings in the company as a member of the collective bargaining unit.

Plaintiff's second theory of recovery is that the specific decision made by defendant not to offer plaintiff the position of Special Clerk-Trombley Warehouse was solely attributable to his handicap, which is unrelated to his ability to perform that particular job. The precedential significance of this opinion, however, is our consideration of plaintiff's first theory of recovery regarding the nature and extent of the employer's duty to accommodate and we address that issue first.

Article 2 of the handicappers' act governs the employment context and provides:

"(1) An employee shall not:

"(a) Fail or refuse to hire, recruit, or promote an individual because of a handicap that is unrelated to the individual's ability to perform the duties of a particular job or position.

"(b) Discharge or otherwise discriminate against an individual with respect to compensation or the terms, conditions, or privileges of employment, because of a handicap that is unrelated to the individual's ability to perform the duties of a particular job or position.

"(c) Limit, segregate, or classify an employee or applicant for employment in a way which deprives or tends to deprive an individual of employment opportunities or otherwise adversely affects the status of an employee because of a handicap that is unrelated to the individual's ability to perform the duties of a particular job or position.

"(d) Fail to refuse to hire, recruit, or promote an individual on the bais of physical or mental examinations that are not directly related to the requirements of the specific job.

"(e) Discharge or take other discriminatory action against an individual on the basis of physical or mental examinations that are not directly related to the requirements of the specific job.

"(f) Fail or refuse to hire, recruit, or promote an individual when adaptive devices or aids may be utilized thereby enabling that individual to perform the specific requirements of the job.

"(g) Discharge or take other discriminatory action against an individual when adaptive devices or aids may be utilized thereby enabling that individual to perform the specific requirements of the job." MCL 37.1201(1); MSA 3.550(201)(1).

We note that subsections (f) and (g) impose an accommodation duty requiring the use of adaptive devices or aids where to do so would enable the individual to perform a particular job. The parties agree that this is not the type of accommodation obligation at issue in this case.

Article 1 of the act imposes a more general duty of accommodation and applies not only in the employment context but to the areas of public accommodations, public services, education and housing as well. Section 102(2) provides simply:

"A person shall accommodate a handicapper for purposes of employment, public accommodation, public service, education, or housing unless the person demonstrates that the accommodation would impose an undue hardship." MCL 37.1102(2); MSA 3.550(102)(2).

This provision of the handicappers' act was adopted by 1980 PA 478 § 1 and became effective on January 20, 1981, several months after plaintiff's termination in September of 1980. Prior to the 1980 amendment, however, article 2 of the act contained a separate provision governing the accommodation duty in the employment context:

"Nothing in this article shall be interpreted to exempt a person from the obligation to accommodate an employee or applicant with a handicap for employment unless the person demonstrates that the accommoda-

tion would impose an undue hardship in the conduct of the business." Formerly MCL 37.1207; MSA 3.550(207), repealed by 1980 PA 478, § 1.

As explained in *Carr v General Motors Corp,* 135 Mich App 226, 232-233; 353 NW2d 489 (1984), *lv granted* 422 Mich 934 (1985), the 1980 amendment was intended to extend the accommodation obligation, which already applied in the employment context, to the other areas already listed. Thus, it is clear that, even prior to the effective date of the 1980 amendment, defendant owed its handicapped employees a duty of accommodation and defendant does not really contend otherwise on appeal.

The central controversy in this case concerns the interpretation to be given "the obligation to accommodate an employee or applicant with a handicap for employment". Where the handicapped employee is initially hired to perform a particular job and sustains injuries in the course of employment such that the employee is physically precluded from continuing in the same job, does "the obligation to accommodate" require the employer to do everything reasonably necessary to place that employee in a new and different job? Our answer is no, notwithstanding several legitimate public policy arguments to the contrary and we arrive at our decision solely by determining the intent of the Legislature, or lack thereof, in enacting MCL 37.1202(2); MSA 3.550(202)(2).

Our primary goal in interpreting any statute is to ascertain and give effect to the intent of the Legislature in enacting the statute. *Lansing v Lansing Twp,* 356 Mich 641, 648; 97 NW2d 804 (1959); *Cliffs Forest Products Co v Al Disdero Lumber Co,* 144 Mich App 215, 222; 375 NW2d 397 (1985). Generally, when the language of a statute is unambiguous, this Court assumes that the Legis-

lature intended the plain and ordinary meaning of its words and we do not look beyond those words in deciding the issue before us. *In re Condemnation of Lands,* 133 Mich App 207, 210-211; 349 NW2d 261 (1984), *lv den* 421 Mich 856 (1985). Where, however, the language of the statute is ambiguous, this Court will consider a variety of factors and apply any one of several principles of statutory construction in giving meaning to the language at issue. We think the term "obligation to accommodate" is so broad as to be ambiguous and we thus look beyond the words employed by the Legislature in an attempt to ascertain the meaning of the accommodation duty under the handicappers' act.

Plaintiff correctly argues that remedial statutes such as the handicappers' act must be broadly interpreted to achieve the goal intended which, in this case, is to provide for the "employment of the handicapped to the fullest extent reasonably possible", *Allen v SEMTA,* 132 Mich App 533, 537-538; 349 NW2d 204 (1984). We agree that the provisions of the handicappers' act in general, and the duty to accommodate in particular, should be liberally construed by the judiciary.

We are also cognizant of the public policy arguments in favor of plaintiff's position. As explained by plaintiff's expert witness at trial, it is particularly difficult to rehabilitate and place those workers who are skilled and experienced but who have been injured in their jobs and are no longer able to perform the work in which they specialize. Plaintiff's witness attributes the difficulty in placing these individuals to employer fears regarding workers' compensation insurance rates and to employer sterotypes regarding employees who have been injured on the job.

It is precisely because we do understand the

enormity of the "lost children syndrome", as referred to by plaintiff's expert witness, that we conclude it is a problem to be solved by the Legislature, not the judiciary, after full and careful consideration of the competing interests involved. Ultimately, the issue to be decided in this case involves the extent of the burden to be placed on employers to provide jobs for employees who, because of injuries sustained on the job, are no longer able to perform the job for which they were hired. A decision in this regard cannot be made without serious consideration of the impact on the Worker's Disability Compensation Act, MCL 418.101 *et seq.;* MSA 17.237(101) *et seq.,* which provides the exclusive remedy against employers for employees injured in the course of their employment. MCL 418.131; MSA 17.237(131). While we recognize that employment discrimination actions are not barred under the exclusive remedy provision of the workers' compensation act, see *Boscaglia v Michigan Bell Telephone Co,* 420 Mich 308; 362 NW2d 642 (1984), that comprehensive statutory scheme cannot be ignored in our interpretation of the accommodation obligation. Given the brevity and ambiguity of the accommodation language in the handicappers' act, we do not think it provident for the judiciary to adopt plaintiff's position at this time.

Our decision is not inconsistent with other opinions of this Court interpreting the accommodation obligation of MCL 37.1201(2); MSA 3.550(201)(2), contrary to plaintiff's arguments on appeal. In *Wardlow v Great Lakes Express Co,* 128 Mich App 54, 64; 339 NW2d 670 (1983), *lv den* 419 Mich 871 (1984), this Court rejected a strict interpretation of the term "handicap" as defined in MCL 37.1103(b); MSA 3.550(103)(b), and held that "the act requires that the employer accommodate the employee for

any handicap unless the employer shows that such accommodation will result in undue hardship". See also *Carr v General Motors Corp, supra,* adopting a similar interpretation.

*Wardlow* lends support to our position for two reasons. First, as to the extent of the accommodation obligation. Quoting with approval from a decision of the Michigan Department of Civil Rights, this Court noted:

> "The obligation to accommodate a handicapped person is twofold. It concerns both alterations to physical structures and modifications to the job. The first kind of accommodation is necessary to provide access to the place of employment. It may include the installation of a ramp or elevator or the reassignment of parking spaces. The second kind of accommodation is necessary to permit actual performance of the job duties. It may include the reassignment of certain peripheral duties to other employees or the rearrangement of equipment or fixtures in the work area.
>
> "The Handicappers' Act requires respondent to make reasonable efforts to accommodate a handicapped applicant or employee." 128 Mich App 65, quoting *Michigan Dep't of Civil Rights ex rel Elizabeth Dingler v General Motors Corp,* (No. 37293-E1, decided October 23, 1979).

We agree with the department's twofold interpretation of the accommodation obligation and we apply it in the instant case.

Second, *Wardlow* and *Carr v General Motors Corp, supra,* present the accommodation issue in the context of employee transfers. In *Wardlow,* plaintiff was a city driver who was laid off in 1978. He responded to the layoff with a request for a transfer to "over-the-road" work and there is no dispute that he would have been granted the transfer because of the applicable seniority rules but for a weight lifting restriction that had been placed on him years earlier. The issue in *Wardlow*

was whether the employer, who denied the transfer because of plaintiff's handicap, had any obligation to accommodate plaintiff's handicap in the over-the-road position in the absence of any undue hardship. We found the employer obligated and remanded the case for further consideration of the undue hardship issue.

In *Carr v General Motors Corp, supra,* plaintiff was placed on a weight lifting restriction following a back operation in 1972, while employed on defendant's current product engineering staff. Several years later, plaintiff was offered a job transfer to the dimension group engineering staff, where there was occasional lifting of weights in excess of plaintiff's restriction. Defendant refused to consider accommodating plaintiff who apparently desired the transfer and plaintiff filed suit. This Court found that the trial court had erred in finding no duty to accommodate and remanded for a trial on the merits.

It is significant that in neither *Wardlow* nor in *Carr* did plaintiffs assert a right to be transferred on the basis of the handicappers' act.[1] Both plaintiffs sustained injuries in the time period during which they were employed by the defendants, but the injuries and weight lifting restrictions were apparently compatible with the jobs for which they were hired. In *Wardlow,* plaintiff sought a transfer on the basis of his seniority rights in order to avoid a layoff. In *Carr,* plaintiff simply wished to make a career move. Plaintiffs alleged in both *Wardlow* and in *Carr* that the denials of the transfer requests were motivated by unlawful discriminatory considerations. Plaintiff thus misconstrues the holdings of *Wardlow* and *Carr* as au-

---

[1] But see *Gloss v General Motors Corp,* 138 Mich App 281; 360 NW2d 596 (1984), from which it might be inferred that plaintiff was asserting such a right under the handicappers' act.

thority in support of his interpretation of the nature and extent of an employer's accommodation duties under the handicappers' act.

II

Our rejection of plaintiff's accommodation theory of recovery does not dispose of this case in its entirety for, as already noted, plaintiff presented two theories of recovery to the jury, one of which we find supported by law.[2] Defendant admits that company policy and the terms of a collective bargaining agreement applicable to plaintiff required some effort at placing plaintiff in another position compatible with his limitations and at a pay rate as close as possible to the rate he received in his former job. Accordingly, defendant identified the Special Clerk-Trombley Warehouse position as one to which plaintiff might be assigned. Plaintiff's alternative theory at trial was that defendant refrained from offering him the Trombley Warehouse position solely because of his handicap. We think that plaintiff presented sufficient evidence to support a verdict under this theory and the case must be remanded for new trial.

At trial, plaintiff carried the initial burden of proving that defendant withheld the Special Clerk-Trombley Warehouse position from him because of his handicap and that the handicap was unrelated to is ability to perform the duties of that job. Since defendant in this case asserted a nondiscriminatory reason for its decision, plaintiff was further obligated to prove that the proffered reason was mere pretext. *Bogue v Teledyne Continental Mo-*

[2] The general verdict of the jury makes it impossible to determine whether the verdict was based on the failure to accommodate theory or on the discrimination theory. Thus, remand for a new trial is necessary. See *People v Long (On remand),* 419 Mich 636, 649; 359 NW2d 194 (1984).

*tors,* 136 Mich App 374, 377-378; 356 NW2d 25 (1984), *lv den* 421 Mich 861 (1985).

Defendant does not contend that plaintiff is physically unable to perform the Special Clerk-Trombley Warehouse duties or that he lacks the necessary background or experience. The central dispute in this contest is whether defendant's decision to withhold the Special Clerk-Trombley Warehouse position was motivated by business judgment or discriminatory bias. In other words, the issue is one of defendant's motive and is thus particularly well suited for resolution by a trier of fact. On appeal, we are concerned only with whether plaintiff presented sufficient evidence in support of his second theory of recovery to warrant remand for a new trial on that claim. We conclude that he did.

Plaintiff's expert witness testified that plaintiff exhibits no character or personality disorder which would prohibit him from working effectively with others. The expert witness further testifed that plaintiff has a low-average reading level and that he is generally qualified for the Special Clerk-Trombley Warehouse position. The credibility of this testimony is one for the trier of fact.

Plaintiff introduced the testimony of his union president, Douglas McIlroy, who testifed that generally, when a union employee became permanently disabled and was thus no longer able to perform the job for which he or she was hired, defendant would notify the union of its efforts to transfer the injured employee to a permanent job consistent with the handicap and provide the union with an opportunity to participate in the committee decision. McIlroy testified that the union was never contacted in plaintiff's case and that the union did support the transfer sought by plaintiff

Finally, plaintiff introduced proofs to establish

that none of the individuals on the ad hoc committee had ever worked with him or had personal contact with him in any other context. Plaintiff's work record prior to the onset of his knee injuries was free of any significant disciplinary write-ups or notations. Furthermore, it is undisputed that the committee did not interview plaintiff's former supervisors or employees and one member of the committee, James Bitinger, superintendent of the motor transportation division, testified that he did not favorably view a work record which included a history of work-related injuries.

## III

Defendant raises two remaining issues. At the beginning of trial, defense counsel unsuccessfully sought to admit into evidence the labor arbitration decision favorable to defendant. The trial court ruled that the arbitration decision was irrelevant and unfairly prejudicial. Defendant argues on appeal that the trial court abused its discretion in excluding this evidence. We do not agree. Even assuming that the proffered evidence is relevant, we cannot say that the court abused its discretion in excluding it as unfairly prejudicial. The arbitration decision did not decide whether plaintiff had been discriminated against under the handicappers' act and there was a legitimate danger that the jury might be unduly influenced by the arbitration.

Defendant also asserts on appeal that the jury verdict in this case is contrary to the law as set forth in *Clifford v Cactus Drilling Corp,* 419 Mich 356; 353 NW2d 469 (1984). That case is clearly not applicable to any of the issues raised in this appeal. *Clifford v Cactus Drilling* involves neither the handicappers' act nor a collective bargaining agreement.

IV

On cross-appeal, plaintiff argues that the trial court erred in refusing to order plaintiff's reinstatement and in refusing to award attorney fees under the act rather than under the Wayne County Court Rule. It is true that the handicappers' act authorizes the issuance of injunctive relief, MCL 37.1606(1); MSA 3.550(606)(1), as well as the recovery of attorney fees. MCL 37.1606(3); MSA 3.550(606)(3). However, prevailing civil rights plaintiffs do not have automatic rights to either of these two forms of relief.

The decision of a trial court to grant or deny reinstatement is a matter of equity and is reviewed *de novo*. *Southeastern Oakland County Incinerator Authority v Avon Twp*, 144 Mich App 39; 372 NW2d 678 (1985). The trial court record in this case submitted on appeal does not include a transcript of any hearing on plaintiff's request for reinstatement or attorney fees and we thus do not have the benefit of the court's analysis. We note, however, that plaintiff's attorney did argue in closing argument that plaintiff was entitled to economic losses of $74,000. The jury returned a verdict of $115,000, plus interest computed at $51,770. We further note that plaintiff does not seek reinstatement to a former position from which he was unlawfully discharged; rather, plaintiff's request is for reinstatement to a job which he has never held and which has been assigned to someone else. Given the nature of the verdict and the difficulty of reinstatement, we do not think we would have arrived at a contrary result had we been presented with the same request.

The award of attorney fees under a civil rights statute is a matter of discretion for the trial court. In exercising its discretion, however, the court should consider a request for attorney fees in light

of the legislative purposes involved. See *King v General Motors Corp,* 136 Mich App 301; 356 NW2d 626 (1984), *lv den* 422 Mich 871 (1985). Plaintiff's failure to produce a copy of the transcript of the hearing on his motion for attorney fees precludes appellate review of the court's denial since we are unable to ascertain the reasons upon which the court relied.

Reversed and remanded for proceedings consistent with this opinion. No costs, a public question being involved.