HATFIELD v ST MARY'S MEDICAL CENTER

Docket No. 150429. Submitted December 15, 1994, at Lansing. Decided June 2, 1995, at 9:25 A.M. Leave to appeal sought.

Pamela D. Hatfield brought an action in the Saginaw Circuit Court against St. Mary's Medical Center, alleging employment discrimination in violation of the Handicappers' Civil Rights Act, MCL 37.1101 *et seq.*; MSA 3.550(101) *et seq.* The plaintiff was employed by the defendant in a position that required the ability to lift about forty pounds. The plaintiff, after being involved in an automobile accident that was unrelated to her employment, could not do the lifting required of her position. She attempted to return to work with a restriction by her physician from lifting more than ten pounds. She found she was unable to continue working and, at the employer's suggestion, applied for a one-year medical leave of absence. Six months later, she sought to return to work and presented a note from her physician indicating that she had a temporary restriction against lifting more than twenty-five pounds. Although there is some dispute, the plaintiff's employment apparently was thereafter terminated. The jury returned a verdict for the plaintiff and the trial court, Leopold P. Borrello, J., entered a judgment consistent with the verdict. The plaintiff appealed.

The Court of Appeals *held:*

1. The trial court should have granted the defendant's motion for a directed verdict at the close of the plaintiff's proofs. The trial court's judgment must be reversed and the matter remanded for entry of an order of dismissal.

2. At the time applicable to this action, the Handicappers' Civil Rights Act provided that the only handicaps covered by the act, for purposes of employment, were those unrelated to the ability to perform the duties of the position. The act did not

REFERENCES

Am Jur 2d, Job Discrimination §§ 209-216.

Handicap as job disqualification under state legislation forbidding job discrimination on account of handicap. 78 ALR4th 265.

What constitutes handicap under state legislation forbidding job discrimination on account of handicap. 82 ALR4th 26.

require employers to adjust or modify job duties otherwise required by the job description in order to accommodate a handicapped employee. Therefore, the plaintiff was not handicapped because her disability related to her ability to perform the duties of her position.

3. The fact that the plaintiff was returning to work from a medical leave of absence rather than applying for the position for the first time does not change her ability to use the Handicappers' Civil Rights Act.

4. The trial court erred in instructing the jury that an employer must give an employee a reasonable time to heal. The plaintiff did not allege that the defendant denied her adequate leave time and, in fact, chose to cut her leave short and return to work.

Reversed and remanded.

CIVIL RIGHTS — HANDICAPPERS' CIVIL RIGHTS ACT — COVERED HANDICAPS.

Before June 1990, the Handicappers' Civil Rights Act provided that the only handicaps covered by the act, for purposes of employment, were those unrelated to the ability to perform the duties of the position; the act did not require employers to adjust or modify job duties otherwise required by the job description in order to accommodate a handicapped employee (MCL 37.1103[b]; MSA 3.550[103][b]).

*Fordney, Cady, Mastromarco & Jahn, P.C.* (by *Victor J. Mastromarco, Jr.,* and *Jo Ellen O'Connor*), for the plaintiff.

*Chaklos, Jungerheld & Hahn, P.C.* (by *Thomas C. Wimsatt*), for the defendant.

Before: TAYLOR, P.J., and GRIFFIN and W. G. SCHMA,* JJ.

TAYLOR, P.J. Defendant appeals as of right the circuit court's judgment for plaintiff. The judgment was based on a jury verdict arising out of an employment discrimination claim under the Handicappers' Civil Rights Act (HCRA), MCL 37.1101 *et*

* Circuit judge, sitting on the Court of Appeals by assignment.

*seq.*; MSA 3.550(101) *et seq.* We reverse and remand for entry of an order of dismissal.

In 1984, defendant employed plaintiff as a computer operator, data entry clerk. Her job description provided that she must have "the ability to stand, walk, as well as lift and carry medium weight (average about forty pounds) for four to five percent of work time." This description was accurate and plaintiff admitted that her job did involve lifting printers, screens, keyboards, and paper products.

On September 19, 1988, plaintiff was involved in an automobile accident that was unrelated to her employment. After the accident, she could not do the lifting required by her employer because of a soft tissue injury to her back. She received medical treatment, but her back problems became progressively worse. On December 29, 1988, unable to continue, she took a leave of absence from work and sought treatment for her back pain. On March 14, 1989, following treatment with an orthopedic surgeon, plaintiff returned to work on a two-week trial basis for four hours a day with a weight-lifting restriction of ten pounds. She was not required to do any lifting during this two-week period because her department was involved in computer training when she returned and she spent her time learning this new computer system.

Having satisfactorily completed this two-week period, she presented a return-to-work note from her physician that continued the lifting restriction but allowed her to work eight hours a day. Defendant authorized her to attempt this on a two-week trial basis. To comply with the weight restrictions, plaintiff was instructed to break down items where possible to ensure that she did not exceed her ten-pound lifting restriction. Plaintiff was also advised to get help, if necessary, from someone in the

department, or from security, for items that could not be broken down. She completed her first eight-hour shift and returned to work the following day for a few hours before concluding that she could not continue.

At defendant's suggestion, plaintiff applied for a one-year medical leave of absence effective April 10, 1989. Plaintiff's understanding of the leave of absence was that it could last for one year. During that year, she could come back to work by bringing a slip from her physician and could get her job back if it was available. She also understood that if the job was not available, defendant would make an effort to see that she got a comparable job.

During her leave of absence, plaintiff underwent further treatment and the condition of her back improved. She was released to return to work on September 11, 1989, and presented her physician's note to defendant's personnel department. The note read:

To Whom It May Concern:

Pamela Hatfield has been under my care since May 10, 1989. She may return to work on September 11, 1989 with a weight restriction of 25 pounds, (this is a temporary weight restriction).

Plaintiff's supervisor, Julie Carey, expressed reservations about the weight restriction. As related by plaintiff at trial, Carey called her approximately three days later and stated that, regardless of the lifting restriction, plaintiff could not have the job back because of potential liability should plaintiff reinjure her back on the job. Because Carey was her supervisor, plaintiff testified that she believed that Carey had fired her. Defendant denied that plaintiff was terminated by Carey because Carey had no such authority and plaintiff

had about five months of leave remaining. While plaintiff acknowledged that she never received any termination notice in writing or an exit interview, which she understood was part of defendant's termination procedure, she continued to adhere to the view that she had been terminated. Her proofs and arguments regarding this issue were reinforced by defendant's answers to questions posed by the Department of Social Services when plaintiff subsequently applied for benefits. Defendant's answers strongly implied that plaintiff had been terminated.

Premised on these facts, plaintiff brought a lawsuit alleging breach of employment contract by defendant and a violation of the HCRA. Only the HCRA claim reached the jury. The jury returned a verdict for plaintiff in the amount of $70,000.

On appeal, defendant argues that the trial court abused its discretion in failing to direct a verdict in defendant's favor. We find that defendant's position is meritorious and that defendant's motion for a directed verdict should have been granted at the close of plaintiff's proofs.

In reviewing a trial court's decision regarding a motion for a directed verdict, this Court views the evidence presented up to the time of the motion in the light most favorable to the nonmoving party, grants that party every reasonable inference, and resolves any conflict in the evidence in that party's favor to decide whether a question of fact existed. *Morrow v Boldt,* 203 Mich App 324, 327; 512 NW2d 83 (1994); *Stoken v J E T Electronics & Technology, Inc,* 174 Mich App 457, 463; 436 NW2d 389 (1988). Further, the trial court's decision will not be disturbed absent a clear abuse of discretion. *Howard v Canteen Corp,* 192 Mich App 427, 431; 481 NW2d 718 (1992).

The Michigan HCRA went into effect on March

31, 1977, and was amended on June 25, 1990, by 1990 PA 121. Because this matter arose before 1990, the preamendment HCRA is applicable. Before its amendment in June 1990, the HCRA defined the term "handicap" in pertinent part as follows:

> "Handicap" means a determinable physical or mental characteristic of an individual or a history of the characteristic which may result from disease, injury, congenital condition of birth, or functional disorder which characteristic: (i) . . . is unrelated to the individual's ability to perform the duties of a particular job or position, or is unrelated to the individual's qualifications for employment or promotion. [*Adkerson v MK-Ferguson Co*, 191 Mich App 129, 140; 477 NW2d 465 (1991) (quoting MCL 37.1103[b]; MSA 3.550[103][b].]

Our Supreme Court has held that the statutory language cited means that "the only handicaps covered by the act, for purposes of employment, are those unrelated to ability to perform the duties of the position." *Carr v General Motors Corp*, 425 Mich 313, 321-322; 389 NW2d 686 (1986). The *Carr* Court also laid to rest the previously existing conflict in this Court regarding whether employers were obligated to accommodate employees whose handicaps impeded job performance, but who could perform if adequately accommodated. The *Carr* opinion concluded that the HCRA did not require employers to adjust or modify job duties otherwise required by the job description in order to accommodate a handicapped employee. *Id.* at 321-323.

The *Carr* holding is dispositive of plaintiff's HCRA claim. Even when the facts are viewed in the light most favorable to her, plaintiff merely asserts that she could have performed her job if defendant would have accommodated her lifting restriction. Pursuant to the holding in *Carr*, plaintiff's claim

does not fall within the purview of the HCRA. Simply stated, plaintiff was not handicapped because her disability related to her ability to perform the duties of the position; before its amendment, the HCRA did not require this type of accommodation. As a result, plaintiff's claim fell outside the protections afforded by this statute.

As defendant perceptively argues, had plaintiff been applying for the position of entry clerk, she would not have been eligible for employment because of the weight restrictions and, under the act then in effect, could not have pleaded a handicap within the meaning of the HCRA. That is, defendant could have refused to hire plaintiff for this reason and would not have violated her civil rights by doing so. The fact that plaintiff was returning to work from a medical leave of absence rather than applying for the first time does not change her ability to utilize the statute.

Plaintiff has attempted to avoid application of the *Carr* holding by asserting that this Court's decision in *Ashworth v Jefferson Screw Products, Inc,* 176 Mich App 737, 744; 440 NW2d 101 (1989), controls the issue. Plaintiff argues that, pursuant to *Ashworth,* the HCRA imposes a duty on employers to modify peripheral duties in order to allow job performance. Review of the *Ashworth* decision indicates that it was based on this Court's holding in *Rancour v Detroit Edison Co,* 150 Mich App 276, 279; 388 NW2d 336 (1986). However, *Rancour* was decided before the Supreme Court's *Carr* opinion and the *Carr* Court rejected the reasoning and arguments advanced in *Rancour,* effectively overruling that decision. Thus, to the extent that the reasoning relied on in *Ashworth* is inconsistent with our Supreme Court's holding in *Carr,* we decline to follow it. As is well understood, this Court must comply with Supreme Court precedent.

*Boyd v W G Wade Shows,* 443 Mich 515, 523; 505 NW2d 544 (1993). Accordingly, we must reject plaintiff's interpretation of *Ashworth* because such a reading would cause it to be inconsistent with the holding in *Carr.*

Defendant next argues that the trial court erred in giving a special instruction that was premised on an error of law. Specifically, defendant argues that, relying on the decision in *Rymar v Michigan Bell Telephone Co,* 190 Mich App 504; 476 NW2d 451 (1991), the trial court erroneously instructed the jury:

> An employer must give its employees a reasonable time to heal, so long as the delay does not impede getting the employer's work done. If you find that Plaintiff's handicap did adversely affect her capacity to do the work, it is your duty to decide whether, within a reasonable time, Plaintiff's disability and handicap [would have] ceased to adversely affect her capacity to do the work.

We agree with defendant that the trial court erred in giving this instruction.

In *Rymar,* this Court held that an employer must give an employee a reasonable time to heal if the handicap is temporary. *Id.* at 507. The plaintiff in *Rymar* argued that her employment was terminated without first affording her the same amount of leave time as received by other employees. The *Rymar* Court correctly concluded that, on the date of her termination, the plaintiff's disability was related to her ability to do her job. The Court then stated, "However, there remains unanswered a question whether, within a reasonable time, her disability would cease to adversely affect her capacity to do the work." *Id.* On the basis of this conclusion, the *Rymar* Court held that summary

disposition was improper. *Id.* While we question the soundness of the reasoning in *Rymar,* we conclude that we are not constrained to follow it because *Rymar* is distinguishable.

Unlike the plaintiff in *Rymar,* plaintiff in this case never alleged that defendant denied her adequate leave time. Indeed, it was defendant who urged plaintiff to take a medical leave of absence in April, 1989. Plaintiff's leave of absence did not expire until April, 1990. However, plaintiff made the decision to return to work approximately six months before the medical leave expired, effectively asserting that she was sufficiently healed to perform the duties of her job. If she could not perform those duties, she had no protections under the HCRA and could be terminated as she, in fact, asserts she was. Because plaintiff made the conscious choice to cut her leave short and return to work, she will not now be heard to claim that defendant did not provide her adequate time to heal. Therefore, we hold that the trial court erred in giving the jury the "time to heal" instruction.

Reversed and remanded for entry of an order of dismissal.