FRANKENMUTH MUTUAL INSURANCE COMPANY v MASTERS

Docket No. 193649. Submitted April 2, 1997, at Lansing. Decided August 15, 1997, at 9:10 A.M. Leave to appeal sought.

Frankenmuth Mutual Insurance Company brought an action in the Alpena Circuit Court, seeking a declaration that it had no duty to indemnify or defend either George Edwin Masters or his son, George Enger Masters, under either a homeowner's insurance policy issued to the senior Masters or a commercial liability policy issued to the senior Masters as the owner of a business, Masters Men's Shop. Named as defendants in the declaratory judgment action were the Masters, the owners and insurers of businesses that were located near Masters Men's Shop that had suffered losses as a result of a fire that had started at the men's shop and had spread to the nearby buildings, and others. Each of the Masters had given a statement to the police shortly after the fire that indicated that they had intentionally started a fire in the men's store with the intent of causing smoke damage to the inventory of the men's store, but that they had not intended to cause damage to other buildings. Each of the Masters had been charged with three counts of arson, one count involving the men's shop and the other two counts involving nearby businesses that had been damaged, and each had been convicted of the count involving the men's shop and acquitted of the counts involving the other businesses. The court, Joseph P. Swallow, J., granted summary disposition for the plaintiff, finding that there had been no "occurrence" within the meaning of the language of either policy because the Masters intentionally set the fire and, alternatively, that coverage was barred by the intentional acts exclusion of each policy because the damage to the nearby businesses would have been readily apparent to a reasonable person. Accordingly, the court held that the plaintiff had no duty to defend or indemnify the Masters. The owners of the nearby businesses and their insurers appealed.

The Court of Appeals *held*:

1. Each policy provided liability coverage where bodily injury or property damage was caused by an occurrence. An occurrence was defined in each policy as an accident. Because the term "accident" was not defined in the policy, it is deemed to have its ordinary meaning: an event that is not anticipated and is unforeseen and

unexpected and that is without an insured's foresight or expectation and without design or intentional causation on the part of the insured. In the absence of contrary language in an insurance policy, the question whether an event is an accident must be evaluated from the standpoint of the insured. Accordingly, whether the damage to the other businesses was an occurrence within the meaning of the insurance policies turns on whether the burning of the buildings housing those businesses was accidental from the standpoint of the Masters.

2. There is evidence in this case that the Masters intentionally set the fire in the building housing the men's shop. However, there is also evidence that they intended only to cause smoke damage to the contents of the men's shop and did not intend to burn the nearby buildings. The fact the Masters intentionally started the fire in the men's shop does not preclude the burning of the other buildings from being found to be accidental if the Masters did not intend to burn the nearby buildings and if they were not aware that such harm was likely to follow from their act of starting the fire in the men's shop. Because there was evidence from which a trier of fact could find that the Masters did not intend to set a fire that would spread to the nearby buildings and did not expect the fire they set to so spread, the trial court should not have decided as a matter of law the question whether there had been an occurrence within the meaning of the policies. Accordingly, the trial court erred in granting summary disposition for the plaintiff on the basis that, as a matter of law, there had not been an occurrence within the meaning of either policy.

3. The commercial liability policy excluded from its coverage property damage "expected or intended from the standpoint of the insured." Because there was evidence from which a trier of fact could conclude that the damage to the other buildings and businesses was not expected or intended by the Masters, the trial court erred in concluding as a matter of law that coverage under the commercial liability policy was precluded by the intentional acts exclusion of that policy and in granting summary disposition for' the plaintiff on the basis of that exclusion.

4. The intentional acts exclusion of the homeowner's policy provided that personal liability coverage does not apply to property damage "which may be reasonably expected from the intentional or criminal acts of an insured or which is in fact intended by an insured." Thus, under the homeowner's policy, the question whether coverage is excluded by reason of an intentional or criminal act of an insured requires evaluation under an objective standard to determine whether there is a substantial probability that

the damage suffered would result from the intentional or criminal act of an insured. To establish a substantial probability, the indications not only must be strong enough to alert a reasonably prudent person to the possibility that the results will occur, but also must be sufficient to forewarn the person that the results are highly likely to occur. The trial court correctly concluded as a matter of law that under the facts of this case the Masters should have known that there was a substantial probability that the fire that they intentionally started would spread to the other buildings and properly granted summary disposition for the plaintiff with respect to the claim of coverage under the homeowner's policy on the basis of the intentional acts exclusion in that policy.

Affirmed in part, reversed in part, and remanded.

1. INSURANCE — LIABILITY INSURANCE — ACCIDENT.

The term "accident," where used in a liability insurance policy and where it is not otherwise defined in the policy, is deemed to have its ordinary meaning: an event that is not anticipated and is unforeseen and unexpected and that is without an insured's foresight or expectation and without design or intentional causation on the part of the insured; in the absence of contrary language in an insurance policy, the question whether an event is an accident must be evaluated from the standpoint of the insured.

2. INSURANCE — LIABILITY INSURANCE — INTENTIONAL ACTS EXCLUSIONS — SUBSTANTIAL PROBABILITY.

The question whether liability coverage is excluded under an insurance policy that contains a provision that denies coverage for bodily injury or property damage that may be reasonably expected from the intentional or criminal acts of an insured requires evaluation under an objective standard to determine whether there is a substantial probability that the damage suffered would result from the intentional or criminal act of an insured; to establish such a substantial probability, the indications not only must be strong enough to alert a reasonably prudent person to the possibility that the results will occur, but also must be sufficient to forewarn the person that the results are highly likely to occur.

*Braun Kendrick Finkbeiner, P.L.C.* (by *Jeffrey C. Wilson*), for the plaintiff.

*Klemanski and Honeyman, P.C.* (by *James C. Klemanski* and *Edward J. Everhart*), for defendants

Meridian Mutual Insurance Company and State Mutual Insurance Company.

*Freel & Freel, P.C.* (by *Timothy R. Freel*), for defendant Lake States Insurance Company.

*Gillard, Bauer, Mazrum, Florip, Smigelski & Gulden* (by *Timothy M. Gulden*), for defendants Sandersons and G & L Ventures, Inc.

*Boyce, White & White* (by *Daniel W. White*), for defendants Ritzler.

Before: SAAD, P.J., and NEFF and JANSEN, JJ.

JANSEN, J. In this declaratory judgment action, appellants appeal as of right from a March 6, 1996, order of the circuit court granting summary disposition in favor of plaintiff Frankenmuth Mutual Insurance Company pursuant to MCR 2.116(C)(10). We affirm in part, reverse in part, and remand for further proceedings.

I

This case arises out of a fire that damaged several buildings located on Chisholm Street in the City of Alpena on August 17, 1993. The fire destroyed the business located at 115 W. Chisholm Street, Masters Men's Shop, owned by George Edwin Masters (hereafter referred to as George Sr.). George Sr. owned the clothing store, and his son, George Enger Masters (hereafter referred to as George Jr.) worked there for George Sr. Both Masters initially confessed to the police that they had intentionally set fire to the store. The fire had a single point of origin and was fueled by paper and cardboard boxes. In the police statement, they admitted starting the fire and that they intended

to cause smoke damage to the inventory in their store. They also indicated that they did not intend to cause damage to the other buildings. However, the fire spread to other buildings and caused damage to the Owl Café and Ritzler's Cleaners, among others. The Masters were charged with arson involving the businesses at 115, 117, and 121 W. Chisholm Street. Each was convicted, following a jury trial, of arson involving 115 W. Chisholm, but each was acquitted of the other two arson charges. During their depositions, both Masters denied even setting the fire and stated that they did not intend to cause damage to the other buildings.

George Sr. had a homeowner's insurance policy and a commercial general liability insurance policy with Frankenmuth Mutual. The various other businesses that suffered losses as the result of the fire and their insurers (hereinafter referred to as appellants) filed suit against the Masters, alleging negligence. Frankenmuth Mutual then filed this declaratory judgment action, contending that there was no coverage under either insurance policy. Frankenmuth Mutual later moved for summary disposition under MCR 2.116(C)(10). The trial court granted the motion with respect to both insurance policies, finding that there was no "occurrence" within the meaning of either policy because the Masters intentionally set the fire. The trial court alternatively found that the intentional acts exclusion of each policy barred coverage because damage to the nearby businesses would have been readily apparent to a reasonable person. Accordingly, the trial court ruled that Frankenmuth Mutual had no duty to defend or indemnify the Masters.

II

We review de novo the trial court's decision regarding a motion for summary disposition under MCR 2.116(C)(10). *Stamps v City of Taylor*, 218 Mich App 626, 636; 554 NW2d 603 (1996). A motion under MCR 2.116(C)(10) tests the factual basis underlying a plaintiff's claim. *Radtke v Everett*, 442 Mich 368, 374; 501 NW2d 155 (1993). The court considers the pleadings, affidavits, depositions, admissions, and any other documentary evidence submitted to it in a light most favorable to the party opposing the motion. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). If the documentary evidence shows that there is no genuine issue with regard to any material fact and the moving party is entitled to judgment as a matter of law, then the trial court may grant summary disposition under MCR 2.116(C)(10). *Id.*

III

A

Appellants first contend that the trial court erred in ruling, as a matter of law, that there was no "occurrence" as defined in the commercial liability policy. An insurance policy is a contract between the parties. To decide whether a policy covers a particular act, the court must determine what the parties agreed to in the policy. *Fire Ins Exchange v Diehl*, 450 Mich 678, 683; 545 NW2d 602 (1996). To determine what the parties agreed to, the court must apply a two-part analysis. First, the court must decide if the occurrence section of the policy includes a particular act. If so, the court must then decide if coverage is denied under one of the policy's exclusions. *Id.*

The commercial liability policy provides:

This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;" and

(2) The "bodily injury" or "property damage" occurs during the policy period.

*     *     *

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

The word "accident" is not defined in the insurance policy. Therefore, the commonly used meaning of the word is to be used. *Arco Industries Corp v American Motorists Ins Co*, 448 Mich 395, 404; 531 NW2d 168 (1995). Our Supreme Court has defined accident as

"anything that begins to be, that happens, or that is a result which is not anticipated and is unforeseen and unexpected by the person injured or affected thereby—that is, takes place without the insured's foresight or expectation and without design or intentional causation on his part. In other words, an accident is an undesigned contingency, a casualty, a happening by chance, something out of the usual course of things, unusual, fortuitous, not anticipated, and not naturally to be expected." [*Group Ins Co of Michigan v Czopek*, 440 Mich 590, 597; 489 NW2d 444 (1992), quoting *Guerdon Industries, Inc v Fidelity & Casualty Co of New York*, 371 Mich 12, 18-19; 123 NW2d 143 (1963).]

Further, we are required to evaluate the accident from the standpoint of the insured because the insurance policy is silent with respect to perspective. *Auto Club Group Ins Co v Marzonie*, 447 Mich 624, 646-648, 659; 527 NW2d 760 (1994) (opinions of Justice GRIFFIN, joined by Chief Justice CAVANAGH and Justice

BRICKLEY, and Justice LEVIN); *Arco, supra,* p 405. Therefore, we must evaluate whether the fire was accidental from the standpoint of the Masters.

The evidence in this case is that the Masters intentionally started a fire in their store by using paper products and cardboard boxes. No accelerants were used to start the fire, and the fire had a single point of origin. In their statements to the police, the Masters stated that they intended to cause smoke damage to their store only. They did not intend to burn the other buildings. The Masters were charged with three separate counts of arson, but were convicted only of the one count involving their own store. They were acquitted of the other two counts of arson involving two neighboring buildings. At their depositions, the Masters denied even setting the fire and denied intending to burn the other buildings. Additional deposition testimony of Gweneth White-Erickson, the lead fire investigator, was that most people do not realize how quickly fire spreads and how destructive it can be. White-Erickson also testified that because there had been a relatively small area of fire and that flammable liquids had not been poured throughout the entire floor, the primary purpose of the fire could have been for destroying the inventory or Masters Men's Store itself and not the adjoining buildings.

This Court has held that evidence of a criminal conviction is admissible in a declaratory judgment action in order to determine whether an insurer has a duty to defend and indemnify its insured. *State Farm Fire & Casualty Co v Fisher*, 192 Mich App 371, 376; 481 NW2d 743 (1991); *State Farm Fire & Casualty Co v Moss*, 182 Mich App 559, 562; 452 NW2d 816 (1989). However, in this case, while the Masters were con-

victed of arson with respect to their store, they were *acquitted* of the other two arson charges regarding the adjoining stores. Therefore, we do not believe that the arson conviction can be conclusive of the Masters' intent with regard to the adjoining buildings.

Moreover, our Supreme Court's decision in *Arco*, *supra*, p 416, instructs that there may be an occurrence (an accident) even though the insured committed an intentional act. In the absence of explicit policy language to the contrary, we are required to apply a subjective standard to determine whether the insured intended the harm caused. *Id.*, p 408. First, we must analyze whether the Masters' conduct, from their perspective, evidenced an intent to burn the two adjoining buildings. Second, we must analyze whether the Masters had an awareness that harm was likely to follow from the performance of their actions. *Id.*, pp 409-410. Further, the Court stated: "Mere knowledge of potential danger does not equal knowledge of actual, intentional, expected harm." *Id.*, p 409.

In the present case, the trial court found that the Masters had the specific intent to burn property and that the questions of whose property and how much property they intended to burn were "wholly irrelevant." The trial court also stated that the character of the resulting harm was consistent with the harm intended by the Masters. We believe that the trial court erred in ruling that the Masters, as a matter of law, intended to burn the adjoining buildings and that the question of whose property they intended to burn was irrelevant. The Supreme Court's decision in *Arco* certainly instructs to the contrary. In *Arco*, although there were intentional discharges of volatile organic compounds into the environment by the insured,

there was no evidence presented establishing that the intentional discharges were intended or expected to harm the environment. Thus, there was an occurrence within the meaning of the policy such that the insurer had a duty to defend. See *id.*, pp 417-418.

The case before us presents a similar situation. Although the Masters intended to start a fire in their store, there is evidence that they did not intend or expect to burn the adjoining buildings. Therefore, the trial court erred in deciding this case under a motion for summary disposition. There is a question of fact regarding whether the Masters intended or expected to burn the adjoining buildings. This issue should not have been decided as a matter of law.

B

Appellants also argue that the Masters' failure to install a fire suppression system in their store and the resulting damage to the adjoining buildings caused by the fire constitutes an occurrence under the commercial liability policy.

This argument merits little consideration because the question is whether there was an occurrence within the meaning of the commercial liability policy. Because an occurrence is an accident, not defined in the policy, we must apply the Supreme Court's analyses to the facts of this case. Whether the Masters installed a sprinkler system is not relevant to determining whether there was an occurrence as set forth in the commercial liability policy. However, we have already determined that there is a factual dispute regarding whether the Masters' conduct constituted an accident such that the insurer is under a duty to

defend and indemnify. That question will involve further factual development in the lower court.

C

Appellants also contend that the trial court erred in finding, as a matter of law, that there was no occurrence as defined in the homeowner's policy requiring the insurer to defend and indemnify. The homeowner's policy provides in relevant part:

> 5. "occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:
> a. bodily injury; or
> b. property damage.

This language is virtually identical to the language in the commercial liability policy. Therefore, for the same reasons set forth in part III(A) of this opinion, we conclude that the trial court erred in granting summary disposition in favor of plaintiff with respect to this issue.

There is a question of fact regarding whether the Masters, from their perspective, intended or expected to burn the adjoining buildings. We emphasize that, contrary to the trial court's ruling, whether the actual harm was intended or expected is very relevant. See also, *Diehl, supra*, p 686 (because there was no evidence that the child actor subjectively intended the harm that resulted from the assaults, summary disposition on the basis of the policy's definition of occurrence was denied). The mere knowledge of potential danger does not equal knowledge of actual, intentional, or expected harm. Rather, the question is whether the Masters had an awareness that harm was

likely to follow from the performance of their actions. This question cannot be decided as a matter of law.

Accordingly, the trial court erred in finding that there was no occurrence as defined in the commercial liability policy and the homeowner's policy.

IV

A

Next, appellants contend that the trial court erred in ruling, as a matter of law, that the intentional acts exclusion in the commercial liability policy also precluded coverage. Exclusionary clauses in insurance policies are strictly construed in favor of the insured. *Auto-Owners Ins Co v Churchman*, 440 Mich 560, 567; 489 NW2d 431 (1992). Coverage under a policy is lost if any exclusion within the policy applied to an insured's particular claims. *Id.* Clear and specific exclusions must be given effect because an insurance company cannot be liable for a risk it did not assume. *Id.*

The commercial liability policy provides in relevant part:

> This insurance does not apply to:
> a. "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

Once again, the insurance company must show that the insured subjectively intended and expected injury to result from the intentional act in order to avoid its duty to defend and indemnify. *Churchman, supra*, p 567.

The evidence indicates that there is a question of fact regarding whether the Masters subjectively intended or expected property damage to occur. There is evidence, as previously mentioned, that the Masters neither intended nor expected harm to be caused to the adjoining buildings. Therefore, the trial court erred in deciding this issue as a matter of law. Summary disposition in favor of Frankenmuth Mutual should have been denied. A trier of fact, after hearing all the evidence on the matter, will have to resolve whether the Masters subjectively intended or expected the damage to occur to the adjoining buildings.

B

We must next determine whether the intentional acts exclusion in the homeowner's policy applies so that Frankenmuth Mutual is not under a duty to defend and indemnify under that policy. The homeowner's policy states in relevant part:

> Personal Liability and . . . Medical Payments to Others do not apply to bodily injury or property damage:
> a. which may be reasonably expected from the intentional or criminal acts of an insured or which is in fact intended by an insured.

The difference between the language in the homeowner's policy and the commercial liability policy in this regard is significant. Because the homeowner's policy includes the "may be reasonably expected" language, it is to be evaluated using an objective standard. *Buczkowski v Allstate Ins Co*, 447 Mich 669, 673; 526 NW2d 589 (1994) (BRICKLEY, J.); *Allstate Ins Co v Freeman*, 432 Mich 656, 688; 443 NW2d 734 (1989).

To this end, the word "expected" in the policy has been defined to include situations in which the actor knew or should have known that there was a substantial probability that certain consequences would result from the actions. *Id.*, p 675. It is not enough that a result is reasonably foreseeable, because substantial probability requires more than this. *Id.* The Supreme Court stated that for there to be substantial probability, the indications not only must be strong enough to alert a reasonably prudent person to the possibility of the results occurring, but also must be sufficient to forewarn the person that the results are highly likely to occur. *Id.*

In the present case, we believe that, under an objective standard, the damage to the adjoining buildings may reasonably have been expected as a matter of law. The testimony of the fire investigators was that fire is very destructive and spreads very quickly. Further, the intentional acts exclusion applies because the Masters intentionally set fire in one building and should have known that there was a substantial probability that the fire would spread to the adjoining buildings. Thus, the act in this case of setting fire to one building is highly likely to cause property damage to buildings that immediately adjoin it. Accordingly, we agree with the trial court that Frankenmuth Mutual's homeowner's policy does not apply. The intentional acts exclusion in the homeowner's policy precludes coverage in this case.

V

In sum, we hold that the trial court erred in ruling as a matter of law that there was no occurrence as defined in the commercial liability and homeowner's

policies. The trial court also erred in ruling that the intentional acts exclusion in the commercial liability policy precluded coverage as a matter of law. These issues involve a material factual dispute that must be resolved by a trier of fact. However, the trial court did not err in ruling that the intentional acts exclusion in the homeowner's policy precludes coverage as a matter of law. Accordingly, we reverse the grant of summary disposition in favor of Frankenmuth Mutual with respect to the commercial liability policy and remand for further proceedings. Summary disposition in favor of Frankenmuth Mutual is affirmed with respect to the homeowner's policy. No taxable costs pursuant to MCR 7.219, none of the parties having prevailed in full.