NABOZNY v PIONEER STATE MUTUAL INSURANCE COMPANY

Docket No. 203738. Submitted December 2, 1998, at Detroit. Decided December 22, 1998, at 9:00 A.M. Leave to appeal sought.

John R. Nabozny brought an action in the St. Clair Circuit Court against Kevin M. Burkhardt, seeking damages for injuries sustained in a fight. Burkhardt requested that Pioneer State Mutual Insurance Company defend the action pursuant to a homeowner's insurance policy issued to his parents. Pioneer refused to do so, claiming that the policy did not cover intentional or criminal acts such as those committed by Burkhardt. Burkhardt took no further action and a default judgment was entered against him. The plaintiff sought to recover the judgment from Pioneer directly, but Pioneer objected to the writ of garnishment obtained by the plaintiff. The matter proceeded to trial and the jury returned a verdict in favor of the plaintiff, finding Pioneer required to defend and indemnify Burkhardt. The court, Daniel J. Kelly, J., entered a judgment thereon. Pioneer appealed from the order of judgment and the denial of its motion for judgment notwithstanding the verdict or a new trial.

The Court of Appeals held:

1. The verdict was supported by the evidence.

2. The conduct in question constituted an "accident" and, hence, "occurrence" within the meaning of the policy. The issue whether there is an accident is properly evaluated from the perspective of the insured, not the injured party. It is possible for a cause of action to exist where intentional conduct resulted in unintended and unexpected injuries constituting an accident. The jury's finding that the incident between the plaintiff and Burkhardt was an accident because the plaintiff's injuries were neither intended nor reasonably anticipated by Burkhardt was not against the great weight of the evidence. Although Burkhardt's conduct was intentional, the injuries were not intentional or reasonably expected.

3. The exclusionary language of the policy did not preclude coverage because Burkhardt did not subjectively intend or expect injury to result from his intentional or criminal act.

4. The jury was properly instructed.

Affirmed.

1. WORDS AND PHRASES — ACCIDENT.

The word "accident," according to its commonly used meaning, means an undesigned contingency, a casualty, a happening by chance, something out of the usual course of things, unusual, fortuitous, not anticipated, and not naturally to be expected.

2. INSURANCE — ACCIDENT.

The issue whether an incident should be deemed an "accident" for purposes of insurance coverage should be evaluated from the perspective of the insured, not the injured party; the focus of the inquiry is on the result or consequence of the insured actor's behavior, not the act alone; it is possible for an accident to exist where intentional or criminal conduct by the insured results in unintended or unexpected injuries.

3. INSURANCE — EXCLUSIONS — INTENTIONAL ACTS.

An insurer must show that its insured subjectively intended and expected injury to result from the insured's intentional or criminal act in order to avoid its duty to defend and indemnify the insured under exclusionary language of a policy providing that medical payments to others do not apply to bodily injury or property damage that may be reasonably expected from the intentional or criminal acts of an insured or which is in fact intended by the insured.

*Edson & Hastings* (by *Gerald Edson*), for the plaintiff.

*Richard F. Huegli*, for Pioneer State Mutual Insurance Company.

Before: DOCTOROFF, P.J., and SAWYER and FITZGERALD, JJ.

PER CURIAM. Garnishee defendant Pioneer State Mutual Insurance Company appeals as of right from the circuit court's order denying its motion for judgment notwithstanding the verdict or a new trial and entering judgment on a jury verdict in favor of plaintiff in the amount of $86,288.71. We affirm.

On April 8, 1994, plaintiff and defendant Kevin Michael Burkhardt[1] were involved in a street fight at Brown's Pit in St. Clair County. In response to a remark made by plaintiff, to which Burkhardt took offense, Burkhardt approached plaintiff and initiated a fight. Despite plaintiff's refusal to fight, Burkhardt pushed plaintiff a few times, threw him to the ground, and punched him in the chest before releasing him. As a result, and to both parties' surprise, plaintiff sustained a broken ankle and a hairline fracture to another bone in his leg.

Thereafter, plaintiff filed a civil action against Burkhardt, seeking damages for his injuries. Burkhardt requested that garnishee defendant Pioneer defend the action pursuant to the homeowner's insurance policy issued to his parents. Pioneer refused to do so, claiming that the policy did not cover intentional and criminal acts such as those committed by Burkhardt. No further action was taken by Burkhardt and a default judgment was subsequently entered against him in the amount of $75,000. Thereafter, plaintiff sought recovery of the judgment from Pioneer directly, but Pioneer objected to the writ of garnishment obtained by plaintiff. The matter proceeded to trial and the jury returned a verdict in favor of plaintiff, finding that Pioneer was required to defend and indemnify pursuant to the terms of the policy. In response, Pioneer filed a motion for judgment notwithstanding the verdict or a new trial, arguing that

---

[1] Defendant Kevin Burkhardt is not a party to the instant appeal. Indeed, whether he is, in fact, liable to plaintiff for the injuries sustained is not at issue here; rather, the question to be resolved is whether garnishee defendant Pioneer is required to defend and indemnify Burkhardt for his conduct and the resulting injuries to plaintiff pursuant to the terms of the insurance policy.

the factual findings were against the great weight of the evidence. The court denied the motion, and this appeal ensued.

On appeal, Pioneer first claims that the trial court erred in denying its motion for judgment notwithstanding the verdict or a new trial because the evidence presented at trial did not support the jury's verdict in favor of plaintiff. We disagree.

This Court reviews a trial court's grant or denial of a motion for a directed verdict de novo. *Meagher v Wayne State Univ*, 222 Mich App 700, 708; 565 NW2d 401 (1997). On appeal, this Court must review all the evidence presented up to the time of the motion to determine whether a factual question existed. *Kubczak v Chemical Bank & Trust Co*, 456 Mich 653, 663; 575 NW2d 745 (1998); *Hatfield v St Mary's Medical Center*, 211 Mich App 321, 325; 535 NW2d 272 (1995). In so doing, this Court views the evidence in the light most favorable to the nonmoving party. *Id.* It should likewise grant the nonmoving party every reasonable inference and resolve any conflict in the evidence in the nonmoving party's favor. *Id.* Furthermore, this Court may not substitute its judgment for that of the jury; hence, it must defer to the trier of fact's ability to observe witnesses, determine credibility, and weigh testimony. *Zeeland Farm Services, Inc v JBL Enterprises, Inc*, 219 Mich App 190, 195; 555 NW2d 733 (1996). Likewise, the standard of review for judgment notwithstanding the verdict motions requires review of the evidence and all legitimate inferences in the light most favorable to the nonmoving party. *Orzel v Scott Drug Co*, 449 Mich 550, 557; 537 NW2d 208 (1995). Only if the evidence so viewed fails to establish a claim as a matter of law, should a

motion for judgment notwithstanding the verdict be granted. *Id.* at 558. Finally, the interpretation of an insurance contract is a question of law that this Court likewise reviews de novo. *Morley v Automobile Club of Michigan,* 458 Mich 459; 581 NW2d 237 (1998).

Initially, in determining whether Pioneer must indemnify Burkhardt pursuant to the judgment entered against it, we must look to the language of the insurance policy and interpret the terms therein in accordance with Michigan's well-established principles of contract construction. *Arco Industries Corp v American Motorists Ins Co,* 448 Mich 395, 402; 531 NW2d 168 (1995); *Michigan Millers Mut Ins Co v Bronson Plating Co,* 445 Mich 558, 567; 519 NW2d 864 (1994). First, an insurance contract must be enforced in accordance with its terms. *Upjohn Co v New Hampshire Ins Co,* 438 Mich 197, 207; 476 NW2d 392 (1991). Naturally, we will not hold an insurance company liable for a risk that it did not assume. *Auto-Owners Ins Co v Churchman,* 440 Mich 560, 567; 489 NW2d 431 (1992).

Second, a court cannot create ambiguity in an insurance policy where the terms of the contract are clear and precise. *Id.* Thus, where there is no ambiguity, the terms of the contract must be enforced as written. *Stine v Continental Casualty Co,* 419 Mich 89, 114; 349 NW2d 127 (1984). However, where an ambiguity does exist, the policy of Michigan courts is to construe the contract in favor of the insured. *Auto Club Ins Ass'n v DeLaGarza,* 433 Mich 208, 214; 444 NW2d 803 (1989).

Finally, the fact that a policy does not define a relevant term does not render the policy ambiguous. *Auto Club Group Ins Co v Marzonie,* 447 Mich 624, 631;

527 NW2d 760 (1994). Rather, reviewing courts must interpret the terms of the contract in accordance with their commonly used meanings. *Group Ins Co of Michigan v Czopek*, 440 Mich 590, 596; 489 NW2d 444 (1992). Moreover, the reasonable expectations of the parties must be considered when interpreting insurance policies. *Vanguard Ins Co v Clarke*, 438 Mich 463, 472; 475 NW2d 48 (1991).

In the instant case, we are essentially presented with two questions. First, we must interpret the scope of coverage afforded to Burkhardt under the insurance policy. In other words, we must decide whether the conduct in question constituted an "accident," and, hence, an "occurrence," within the meaning of the policy. In conjunction with this analysis, we must review the nature of the event (i.e., whether it was an intentional act), as well as the nature of the injuries sustained (i.e., whether the injuries were intended or expected under the circumstances). Second, we must construe the exclusionary language in the policy to decide if the intentional acts exclusion applies to the facts of this case.

According to the plain meaning of Pioneer's homeowner's insurance policy, coverage only exists where an "occurrence" has taken place. Therefore, our first inquiry is whether there was an "occurrence" between plaintiff and Burkhardt within the meaning of the policy. The relevant language of the policy provides:

> [Pioneer will provide coverage] [i]f a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies . . . .

Moreover, the policy specifically defines the term "occurrence" as follows:

> [A]n accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:
>   a. bodily injury, or
>   b. property damage.

We find that the language in the policy is clear and unambiguous insofar as Pioneer is required to provide coverage in situations where an accident occurred involving the insured and damages resulted. However, the policy does not explicitly define the term "accident." When the meaning of a term contained in a contract is not obvious from the policy language, the commonly used meaning will control. *Czopek, supra* at 596. Therefore, we refer to the commonly used meaning of "accident" as defined in recent case law. An " ' "accident is an undesigned contingency, a casualty, a happening by chance, something out of the usual course of things, unusual, fortuitous, not anticipated, and not naturally to be expected." ' " *Arco Industries, supra* at 404-405 (citations omitted). See *Marzonie, supra* at 631-632; *Allstate Ins Co v Freeman*, 432 Mich 656, 670; 443 NW2d 734 (1989); *Frankenmuth Mut Ins Co v Masters*, 225 Mich App 51, 56; 570 NW2d 134 (1997).

The Supreme Court has recently debated the issue of what constitutes an "accident," and hence an "occurrence," within the meaning of insurance policies. See *Freeman, supra* at 670; *Frankenmuth Mut Ins Co v Piccard*, 440 Mich 539, 552-553; 489 NW2d 422 (1992); *Czopek, supra* at 598; *Marzonie, supra* at 639-640. In *Marzonie, supra* at 648 (GRIFFIN,

CAVANAGH, and BRICKLEY, JJ., concurring in part), 652, 660 (LEVIN, J., dissenting), the Court finally formed a majority opinion that the issue whether there is an accident should be evaluated from the perspective of the insured, not the injured party. Therefore, in accordance with that principle, we will examine the accident in this case from the standpoint of Burkhardt.

The Supreme Court additionally pronounced that it is possible for a cause of action to exist where intentional conduct resulted in unintended and unexpected injuries constituting an accident. Indeed, the focus of the inquiry is on the result or consequence of the insured actor's behavior, not the act alone. *Piccard, supra* at 548-549; *Arco Industries, supra* at 416-417. Therefore, even if we find that Burkhardt intentionally engaged in the conduct that resulted in plaintiff's injuries, the incident may still be considered an accident under the policy if Burkhardt neither intended to cause the harm, nor reasonably expected that harm would result from his intentional conduct.

Applying the foregoing principles to the instant case, we conclude that the jury's finding that the incident between plaintiff and Burkhardt was an accident because the resulting injuries were neither intended nor reasonably anticipated by Burkhardt was not against the great weight of the evidence. The evidence reveals that plaintiff arrived at Brown's Pit with his friends a while after Burkhardt, and although they were all hanging out in the general vicinity, the individuals did not know each other before this date, and were not "together" at the pit. Plaintiff apparently made a derogatory comment relating to the conduct of a few of Burkhardt's friends to which Burkhardt took offense. In response, he approached plaintiff

with the intent to fight him. Plaintiff at all times opposed a fight and refused to battle with Burkhardt when asked to do so. Although Burkhardt initially walked away from the confrontation, moments later, he approached plaintiff from behind, pushed him a few times, placed his leg behind plaintiff's in an effort to throw plaintiff to the ground, and successfully did so. In fact, Burkhardt specifically stated that his intent was to get plaintiff on the ground and situate himself on top of plaintiff to gain an advantage. Once Burkhardt achieved his objective, he then repeatedly punched plaintiff in the chest or rib area. Burkhardt indicated that he did not want to get in trouble with the law, so he got off plaintiff and left the scene. Although plaintiff did not initially think that he had been hurt, he realized that he had severely injured his ankle when he tried to get up from the ground, but was unable to do so without the assistance of his friends. Thereafter, plaintiff and his friends left Brown's Pit and drove home.

From this evidence, we find that Burkhardt's conduct, including the decision to approach plaintiff, initiate a fight, and take out his aggression on plaintiff, was undoubtedly intentional behavior. In fact, the parties stipulated at trial that Burkhardt engaged in intentional conduct when he so acted. However, our inquiry does not end there in determining whether the incident resulting in injury to plaintiff was an accident. Indeed, we must next examine whether the injuries sustained by plaintiff during the fight were intentional or reasonably expected from the viewpoint of the insured, Burkhardt.

Burkhardt testified during the trial that he did not intend to injure plaintiff when he attacked him. Spe-

cifically, he did not believe the force he used on plaintiff was of a kind sufficient to harm plaintiff at all, let alone break his ankle. He admitted that the ground was rough and rigid; however, he did not intend or expect that plaintiff would suffer harm from the fight. Likewise, plaintiff testified that he did not think the encounter with Burkhardt would result in an injury at all, much less a broken ankle. In fact, when he got home, he wanted to go to his room to rest and did not think he required medical attention, but his mother insisted that he go to the hospital, at which time he discovered the severity of his injuries. Therefore, we conclude that while Burkhardt certainly engaged in intentional conduct when he initiated the fight with plaintiff, the evidence contradicts a finding that he intended to harm plaintiff, or even that harm to plaintiff was anticipated or naturally expected as a result of his conduct. Accordingly, the jury's finding that plaintiff's injuries resulted from an accident because they were neither anticipated nor naturally to be expected was not against the great weight of the evidence.

Having decided that the incident constituted an accident, and hence an occurrence, warranting coverage under the policy, we next turn to whether the exclusionary language in the insurance policy precludes coverage of plaintiff's injuries. The insurance policy states, in pertinent part:

> Medical payments to others do not apply to bodily injury or property damage
>
> a. which may be reasonably expected from the intentional or criminal acts of an insured or which is in fact intended by an insured.

Exclusionary clauses in insurance policies are strictly construed in favor of the insured. *Churchman, supra* at 567; *Masters, supra* at 62. Once again, Pioneer was required to show that Burkhardt subjectively intended and expected injury to result from his intentional or criminal act in order to avoid its duty to defend and indemnify under the exclusionary language of the policy. *Id.* As we already noted, there was substantial testimony that the injuries plaintiff sustained were neither intended by Burkhardt nor reasonably expected by either party, despite the fact that his conduct was intentional. Therefore, in light of our conclusion above, there is no basis for precluding coverage under the exclusionary language. Accordingly, we hold that the jury's finding that, at the time of this incident, plaintiff did not sustain injuries that were intended or reasonably expected to result from either the intentional acts or the criminal acts of Burkhardt was not against the great weight of the evidence. The jury's verdict was adequately supported by the evidence at trial, and the trial court properly denied Pioneer's motion for judgment notwithstanding the verdict or a new trial.

Pioneer's second argument on appeal is that the trial court improperly instructed the jury on the relevant and applicable law to the extent that it was denied a fair trial. Specifically, it contends that the trial court abused its discretion in omitting a few sentences from its requested instructions that it submitted to the court. It claims that the omission of these sentences, in conjunction with the alleged erroneous instructions provided to the jury, constituted error. We disagree. Claims of instructional error in a civil trial are reviewed by this Court for an abuse of

discretion. *Joerger v Gordon Food Service, Inc*, 224 Mich App 167, 173; 568 NW2d 365 (1997). Furthermore, a trial court's decision regarding supplemental instructions will not be reversed unless failure to vacate the verdict would be inconsistent with substantial justice. *Niemi v Upper Peninsula Orthopedic Associates, Ltd*, 173 Mich App 326, 328-329; 433 NW2d 363 (1988). In addition, jury instructions should be reviewed in their entirety, rather than extracted piecemeal to establish error in certain portions. *Wiegerink v Mitts & Merrill*, 182 Mich App 546, 548; 452 NW2d 872 (1990). Error requiring reversal will not be found if, on balance, the theories of the parties and the applicable laws were adequately and fairly presented to the jury. *Murdock v Higgins*, 454 Mich 46, 60; 559 NW2d 639 (1997).

Furthermore, a requested instruction need not be given if it would neither add to an otherwise balanced and fair jury charge nor enhance the jury's ability to decide the case intelligently, fairly, and impartially. *Johnson v Corbet*, 423 Mich 304, 326; 377 NW2d 713 (1985); *Mull v Equitable Life Assurance Society*, 196 Mich App 411, 422-423; 493 NW2d 447 (1992), aff'd 444 Mich 508; 510 NW2d 184 (1994), amended 444 Mich 1239 (1994). A court is not required to give an instruction that does not properly inform the jury of the applicable law or that is not supported by the evidence. *Koester v Novi*, 213 Mich App 653, 664; 540 NW2d 765 (1995), aff'd in part and rev'd in part on other grounds 458 Mich 1; 580 NW2d 835 (1998).

We are not persuaded that the trial court abused its discretion in omitting certain portions of Pioneer's requested instruction, or that Pioneer was deprived of a fair trial by omission of those statements. To the

contrary, the instructions proposed by Pioneer were neither accurate nor applicable; hence, the court properly relied on its own language in formulating the instructions. Contrary to Pioneer's contention, and as already noted above, the correct rule of law is that determinations of whether an incident constitutes an accident under the language in the policy, as well as the related issue whether the injuries sustained were intended or reasonably expected under the circumstances, are to be considered *from the perspective of the insured, not the injured party.* Pioneer incorrectly relies on the nonmajority opinion written by Justice RILEY in *Marzonie, supra* at 634, in claiming that it is the perspective of the injured party that matters. However, a clear reading of the case indicates a majority of the justices ruled that *the insured's perspective controls* whether the incident in question should be deemed an accident under the policy. *Id.* at 647, 668. See also *Arco Industries, supra* at 405.

Therefore, we hold that it was entirely proper for the court to omit the inaccurate portion of Pioneer's requested instruction; indeed, it would have been an erroneous statement of the law had the court included it.

Pioneer also challenges the court's instruction to the jury regarding the intentional nature of the injuries sustained. Specifically, it contends that the following sentences were incorrect statements of law:

> Mr. Burkhardt need not have acted unintentionally for there to have been an accident. His intentional acts are covered by the policy and there is an accident or occurrence so long as he neither intended nor expected the injury which resulted.

*          *          *

> Coverage is not denied under this provision merely because Mr. Burkhardt's act of tripping or knocking Mr. Nabozny on the ground was intentional or criminal. Rather, the focus is on the consequences of Mr. Burkhardt's act, namely, did he intend or reasonably expect that as a result of his action, Mr. Nabozny would sustain bodily injury.

Pioneer contends that the analysis should include an objective examination of the facts to determine if injuries were intended or likely to result. However, we find that the instructions above reflect an accurate and complete explanation of the relevant law governing this case. Indeed, the law requires that a subjective analysis of the incident controls whether there was an occurrence within the meaning of the policy. *Freeman, supra* at 670. Hence, the court accurately instructed the jury that it must decide if Burkhardt reasonably expected that plaintiff would sustain injuries from his conduct.

We hold that the instructions given to the jury by the trial court properly advised the jury of the applicable law and set forth the relevant issues to be decided. Accordingly, the trial court did not abuse its discretion in omitting certain portions of Pioneer's requested instructions.

Affirmed.