INTERNATIONAL UNION, UNITED AUTOMOBILE,
AEROSPACE AND AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA v DORSEY

Docket No. 248412. Submitted December 21, 2004, at Detroit. Decided
October 4, 2005, at 9:00 a.m. Leave to appeal sought.

International Union, United Automobile, Aerospace and Agricul-
tural Implement Workers of America (UAW) and United Broad-
casting Network, Inc. (UBN), brought an action in the Washtenaw
Circuit Court against Helen Dorsey, Edward A. Miller, and others,
alleging fraud, misrepresentation, and breach of their fiduciary
duties in connection with the UAW's investment in the formation
and operation of UBN, a radio network of which the UAW
ultimately became the sole owner following reorganization in
bankruptcy. The defendants filed various counterclaims and
brought third-party actions against other individuals associated
with the UAW. The jury found in favor of the plaintiffs, but
awarded the UAW no monetary damages. The jury found against
the defendants on all their claims. The plaintiffs were awarded
mediation sanctions. The defendants filed a motion for a new trial
or judgment notwithstanding the verdict (JNOV). The court,
Melinda Morris, J., denied the motion. The defendants appealed.

The Court of Appeals *held*:

1. The trial court erred by admitting transcripts from Miller's
earlier and extremely contentious divorce proceedings and by
failing to grant the defendants a new trial on this ground. The trial
judge presiding over the divorce had sealed the record under MCR
8.119(F). The transcripts at issue, which were from a subsequent
hearing on child support held before a different judge, were part of
those sealed records. The attorney for the plaintiffs in this case
obtained the transcripts directly from the court reporter for the
previous hearing, who had since retired. Miller admitted that he
had lied under oath at the child support hearing, but he did not
advise his defense counsel in this case about the sealed records.
While defense counsel objected to the use of the transcripts on the
grounds that they did not impeach Miller rather than on the
grounds that they were part of a sealed record, which is the issue
raised on appeal, failure to consider this issue on appeal would

result in manifest injustice. Miller's credibility became a basic and controlling issue in this case. The transcripts fit within the definition of "court records" under MCR 8.119(F)(4), and could also be considered other records governed by MCR 8.119(D)(4), for purposes of the rules concerning sealed records. Whether Miller's divorce proceedings were open to public access is not controlling with regard to whether recordings of those proceedings must also be made available to the public. Moreover, the court reporter should have transferred the transcripts to the court clerk when he retired, pursuant to MCR 8.108(D). Concern for the integrity of sealed records requires the grant of a new trial. At that time, the plaintiffs will have the opportunity to pursue unsealing the record through the proper procedure. This result renders the defendants' other evidentiary issues moot.

2. The trial court also erred by refusing to grant the defendants JNOV on the plaintiffs' fraud and innocent misrepresentation claims when no evidence was presented on the element of damages. A claim of fraudulent misrepresentation or actionable fraud generally requires a showing that (1) the defendant made a material misrepresentation, (2) the representation was false, (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of the truth and as a positive assertion, (4) the defendant made the representation with the intent that the plaintiff would act on it, (5) the plaintiff acted in reliance on it, and (6) the plaintiff suffered damage. Innocent misrepresentation in the making of a contract is established when a false statement of fact, made without knowledge of its falsity or intent to deceive, is relied on by the other party to the contract to that party's detriment, resulting in the unjust enrichment of the party that made the false statement. No evidence was presented that the plaintiffs suffered damages as a result of the defendants' misrepresentations or that the defendants were unjustly enriched by the misrepresentations. Because the evidence failed to establish the claims as a matter of law, the trial court should have granted the motion for JNOV.

Reversed and remanded for further proceedings.

KELLY, J., concurring in part and dissenting in part, disagreed that the transcripts were part of a sealed record. The defendants did not preserve this issue by objecting at trial on the same ground that they present on appeal, and the issue should not be reviewed. Miller's lack of candor or negligence in failing to inform his counsel about the sealed record cannot form the basis for an error requiring reversal. Even if the issue had been properly preserved, however, the transcripts were not covered by the sealing order.

They were not filed with the court clerk in connection with the divorce action, and thus cannot be part of the record sealed under MCR 8.119(F)(4). Because the transcripts were never filed or ordered by the court to be filed, they are also not records covered by MCR 8.108(D) or (F)(1) or MCR 8.119(D)(4). In all other respects, Judge KELLY concurred with the majority.

1. RECORDS — SEALED COURT RECORDS — TRANSCRIPTS.

A transcript is part of the record for purposes of the rules that apply when a court orders that the record of an action or proceeding be sealed, regardless of whether the proceeding transcribed occurred after the sealing order was entered, whether the transcript was filed, or whether the proceeding was open to the public (MCR 8.108[D] and [F][1], 8.119[D][4] and [F][4]).

2. FRAUD — FRAUDULENT MISREPRESENTATION — ELEMENTS.

A claim of fraudulent misrepresentation or actionable fraud requires a showing that (1) the defendant made a material representation, (2) the representation was false, (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth and as a positive assertion, (4) the defendant made the representation with the intent that the plaintiff would act on it, (5) the plaintiff acted in reliance on it, and (6) the plaintiff suffered damage.

3. FRAUD — INNOCENT MISREPRESENTATION — CONTRACTS — ELEMENTS.

Innocent misrepresentation in the making of a contract is established when a false statement of fact, made without knowledge of its falsity or intent to deceive, is relied on by the other party to the contract to that party's detriment, resulting in unjust enrichment of the party making the false statement.

*Soble & Rowe, LLP* (by *Richard A. Soble, Jonathan D. Rowe,* and *Mary R. Minnet*), and *Bodman, Longley & Dahling, LLP* (by *Dennis J. Levasseur*), for International Union, United Automobile, Aerospace and Agricultural Implement Workers of America; United Broadcasting Network, Inc.; Daniel Sherrick; Roy Wyse; and Frank Joyce.

*Cooter, Mangold, Tompert & Wayson, L.L.P.* (by *Dale A. Cooter* and *Donna S. Mangold*), and *Ellis, Eby,*

*Conner, Smillie & Bourque* (by *Thomas B. Bourque*) for Helen Dorsey, Pat Choate, Edward A. Miller, and Kay Casey.

Before: METER, P.J. and KELLY and SCHUETTE, JJ.

SCHUETTE, J. In this fraud and misrepresentation case, defendants Helen Dorsey, Pat Choate, and Edward A. Miller and third-party plaintiff Kay Casey[1] appeal as of right the denial of their motion for a new trial or judgment notwithstanding the verdict (JNOV) in favor of plaintiffs International Union, United Automobile, Aerospace & Agricultural Implement Workers of America (UAW) and United Broadcasting Network, Inc. (UBN) and third-party defendants Daniel Sherrick, Frank Joyce, and Roy Wyse.[2] We reverse and remand. We do not retain jurisdiction.

FACTS

This case arises from the parties' investment, formation, and operation of a Florida-based radio network, the United Broadcasting Network. In April 1996, the UAW entered into an agreement to purchase the assets of the People's Radio Network (PNI). PNI was a nonprofit radio network that was generating profit and, therefore, had tax problems. PNI's chief executive officer, owner, and principal on-air personality, Charles Harder, contacted Choate to. seek assistance with his tax problems. Choate subsequently contacted Miller and Dorsey. Choate eventually began contacting potential investors, including the UAW.

---

[1] We will refer to these parties as defendants or the Choate parties.

[2] We will refer to these parties as plaintiffs or the UAW parties.

According to plaintiffs, the premise of the UBN business plan presented by Choate, Miller, and Dorsey focused on two areas. First, UBN would provide a national forum capable of informing and educating the public about trade, economic, and public affairs, areas that would be of particular interest to labor unions. Second, on the basis of sales projections, plaintiffs assert that Choate, Miller, and Dorsey stated that UBN would generate a profit for its investors similar to that experienced by PNI. This would be accomplished by expansion of the listening audience base and expansion of the product offerings started by Harder, who would continue as talk-show host for the new network.

In early summer 1995, the UAW's representative, Frank Joyce, joined Miller and Choate in Florida, where they met with Harder. Together, they inspected PNI facilities, reviewed its programming and operations, and discussed PNI's financial status. The UAW agreed to invest $5 million in UBN in exchange for 100 percent of the network's preferred stock, which would later be converted to 25 percent of common stock. Charles and Diane Harder, Choate, and Dorsey each invested $250, with each receiving 25 percent of the remaining common stock. Dorsey testified that the UBN stock was in her name rather than Miller's because Miller did not want to disclose UBN stock as one of his assets during his divorce proceedings.

A law firm was hired to perform the due diligence review on Harder's company. In the meantime, Choate, Miller, and Dorsey entered into a commitment agreement with the UAW. The commitment agreement set forth the governance and policies of the company to be formed. During that time, an issue arose concerning the political content of Harder's radio shows, which were increasingly against the Clinton administration. The

UAW wanted these instances reduced, but Harder became more and more reluctant to cooperate. Instead of selling on-air advertising, the radio station sold products from a catalog that it distributed to its listeners. It was the job of the on-air personalities to push certain products in order to generate revenue for the station. Harder began to bring in less money. Eventually, during early fall 1995, Harder was so unhappy with his lack of control over what used to be his radio station that he left the network.[3] The reasons Harder left the station and whether plaintiffs or defendants were responsible for his unhappiness became issues at trial.

The due diligence review continued through the summer and fall of 1995. Finally, in April 1996, UBN was incorporated in Delaware. Upon formation, UBN's board of directors consisted of Choate and Dorsey, as well as two directors from the UAW, Daniel Sherrick and Roy Wyse. Miller was appointed as the network's chief executive officer.

According to testimony from Sherrick, UBN was operating at a loss rather than making a profit as was contemplated by the parties. The UBN board faced many important business decisions. The board had various items it could not agree on, including how to handle Harder, how to attract and keep a long-term listening audience, what products to sell, and the types of agreements and business ventures the company should enter into. The parties disagreed with the actions each took, which formed a good portion of the parties' complaints. In December 1996, Miller asked the UAW to loan UBN an addition $2.5 million; in February 1997, the UAW loaned UBN another $1 mil-

---

[3] After Harder left the network, he gave up his shares of stock, and it was redistributed. Part of the stock went to third-party plaintiff Kay Casey, which is how Casey became involved in this case.

lion. According to plaintiffs, UBN could not generate enough money to pay off its debts; therefore, the UAW and three other creditors joined in filing a petition for bankruptcy.

The UAW proposed a plan of reorganization under which the UAW would pay $1.2 million to satisfy UBN's creditors and would waive the money UBN owed to the UAW. The plan was objected to by Choate and others, but the objections were ultimately withdrawn. Under the plan, all parties would lose their stock ownership in UBN. During the course of the bankruptcy action, any investor could bid on UBN. However, the only bid for UBN was from the UAW. The bankruptcy court approved the UAW's plan for reorganization; consequently, the UAW became the sole owner of UBN.

In April 1997, the UAW sued Choate, Miller, and Dorsey for fraud and misrepresentation in inducing the UAW to invest $5 million to form UBN through material misrepresentations about PNI's financial and operating condition, as well as misrepresentations about its listenership base. The complaint asserted that listenership was represented to be six million listeners a day, but it was actually closer to 250,000. Shortly thereafter, the UAW amended its complaint for the first time to add UBN as a plaintiff and further allege that Choate, Miller, and Dorsey breached their duties of care and loyalty, which they owed to UBN as its officers and directors, by misappropriating corporate assets for personal use, taking money from UBN for unauthorized expenses, setting their own compensation without independent review, and other acts of self-dealing.

In May 1997, Choate, Dorsey, and Miller filed their answer to the first amended complaint. On the same day, Choate and Dorsey filed a counterclaim against the UAW and, in the same pleading, brought a third-party

complaint against Sherrick, Wyse, and Joyce. The claims against the UAW were for breach of contract, breach of a covenant of good faith and fair dealing, breach of its fiduciary duty as a joint venturer, and breach of its fiduciary duty as a controlling shareholder, and negligence under respondeat superior as the employer of Joyce, Sherrick, and Wyse. The third-party claim against Sherrick and Wyse asserted that they breached their fiduciary duties in their capacity as directors of UBN. Choate, Dorsey, and Casey also brought claims against the UAW and Joyce for aiding and abetting Sherrick and Wyse's breach of their fiduciary duties and for conspiring with Sherrick and Wyse to breach their fiduciary duties as directors of UBN.

This case went to trial in early July 2001. The damages sought by each set of parties were substantial. The UAW asked the jury to award it $5 million for the material misrepresentation claim that the UAW asserted caused it to invest in UBN, and to award UBN $153,115 for the Choate parties' and others' unauthorized expenses. The Choate parties sought $68 million for the value of their stock in UBN. The jury returned a verdict in August 2001. The jury's findings on the various claims were as follows: The jury found in favor of UBN on its breach of fiduciary duty claim and awarded damages in the amount of $120,000; it found in favor of the UAW on its fraud and innocent misrepresentation claim, but declined to award the UAW any money for damages; and it found against Choate, Dorsey and Casey on all their claims. After the jury rendered its verdict, the UAW and UBN sought mediation sanctions and were awarded about $1.3 million. In September 2002, the Choate parties filed a motion for a new trial or judgment notwithstanding the verdict.

In their posttrial motion, Choate, Miller, and Dorsey sought a judgment notwithstanding the verdict on the UAW's fraud and innocent misrepresentation counts on the grounds that the UAW failed to offer any damage theory on those claims, and thereby failed to establish a prima facie case entitling it to relief. Plaintiffs contend that this motion is without legal foundation and that the jury found fraud but awarded no damages to the UAW; therefore, they believe the Choate parties ultimately won.

In the same posttrial motion, Choate, Dorsey, and Casey also moved for a new trial on all their claims against the UAW, Sherrick, Wyse, and Joyce and put forth the following justifications for the motion: (1) the UAW parties intentionally violated a court order sealing records by obtaining and using sealed records from the court file involving Edward Miller's divorce and custody proceeding; (2) during cross-examination of one of the Choate parties' expert witnesses, counsel for plaintiffs falsely represented language in a Delaware Supreme Court case as the language of that court; (3) during closing argument, counsel for plaintiffs made an inappropriate reference to settlement; and (4) during the trial, the court made two evidentiary errors, which included the use of the sealed divorce transcripts to impeach Miller and the admission of numerous hearsay memoranda. As part of their motion, defendants argued that while any one episode of misconduct or evidentiary error would be sufficient to justify a new trial, the effect of all the misconduct mandated a new trial. The trial court and plaintiffs disagreed.

After hearing the arguments, the trial court denied defendants' motion in its entirety. The trial court found no evidence of misconduct on the part of the attorneys in procuring a copy of the divorce hearing transcripts. This appeal ensued.

## II. DIVORCE TRANSCRIPTS

Defendants argue that the trial court erred in admitting the Miller divorce hearing transcripts into evidence because the transcripts were part of a sealed record. We agree.

### A. STANDARD OF REVIEW

Unpreserved errors will not be reviewed by this Court unless lack of review would result in manifest injustice. *Milligan v Milligan,* 197 Mich App 665, 671; 496 NW2d 394 (1992). The interpretation of the court order sealing the records of the Miller divorce and the interpretation of Michigan Court Rules are issues of law. Issues of law are reviewed de novo. *Burba v Burba (After Remand),* 461 Mich 637, 647; 610 NW2d 873 (2000).

### B. ANALYSIS

In 1991, Edward Miller began an extremely contentious divorce from his wife. During those proceedings, Judge Ross Campbell issued an "Amended Opinion and Order Sealing Court File and Records." The order stated in part:

> NOW, THEREFORE, for the reasons stated, IT IS HEREBY ORDERED, that all of the files and records of this cause, including but not limited to the files and records of the Friend of the Court, shall be and the same hereby are sealed . . . .

In 1996, the issue of child support was revisited and, during the course of those proceedings, Miller testified before a judge newly assigned to the case, Judge Kurtis T. Wilder. Miller testified about his financial situation, his departure from the job he held before his job at UBN, and his relationship with Helen Dorsey. During

the present case, plaintiffs' attorneys obtained copies of those transcripts. They used those transcripts to call into question Miller's credibility because his past statements were inconsistent with the statements he made under oath during the present trial. Miller admitted that he lied under oath twice to Judge Wilder.

Defendants assert that plaintiffs obtained these documents in an underhanded manner. Plaintiffs contend that when plaintiffs' attorney, Jonathan D. Rowe, informed the lower court clerk that he wanted to see the transcripts of the hearings in the Miller divorce case, the clerk gave him the name and telephone number of the court reporter who transcribed those proceedings. Rowe then contacted the court reporter and ordered the transcripts from him. Plaintiffs note that they first learned of the existence of Miller's testimony from a complaint filed by Miller in federal court against Judge Wilder and several other individuals who were involved in the divorce proceedings.

Defendants strongly object to plaintiffs' assertion that they (plaintiffs) obtained the transcripts in a usual or customary way. Defendants contend that as soon as the clerk informed Rowe that the case was sealed, the proper course of action was to file a motion to unseal the records. They claim that the clerk violated the court rules by giving Rowe the name and number of the court reporter. Further, defendants assert that the court reporter violated the court rules because the court reporter was retired and MCR 8.108(D) directs that when a court reporter retires, he or she must transfer the records to the clerk of the court in which the case was tried. Finally, defendants note as an indication of plaintiffs' bad faith that plaintiffs drafted a motion to lift the sealing order entered by Judge Campbell, but then chose not to file the motion.

It appears that "bad faith" or certainly truculent behavior was exhibited on both sides of this matter. It does appear that Miller failed to inform his attorneys of the sealed record from five years before. But the point remains that a court order sealing a record cannot be defied by a party or ignored by a reviewing court. Plus, plaintiffs' efforts to obtain the records from a retired court reporter at the court reporter's house sound like a bad episode of *The Rockford Files*.

Defendants contend that when plaintiffs began questioning Miller about the divorce proceedings, defense counsel had no idea that the records in that case were supposed to be sealed. Defense counsel did object to the manner in which the transcripts were used, and they objected because they believed the transcripts did not impeach Miller. However, counsel did not articulate an objection based on surprise because they did not know the record was sealed. Further, even if Miller knew that his divorce record was sealed and that he had lied under oath, he should have been able to rely on that seal. Miller could not have anticipated a situation in which a sealed record could be used to impeach him when no motion was ever filed to unseal the record. While testifying, Miller was surprised and, as a witness, he was in no position to object to the introduction of his prior sealed statements.

Plaintiffs contend that this Court should decline to review the issue of surprise because it was unpreserved. However, given that defendants could not have known that plaintiffs had accessed documents that were supposed to be sealed, we will consider this issue in order to prevent manifest injustice. *Milligan, supra* at 671. Manifest injustice results if the defect is of such a magnitude as to constitute plain error requiring a new trial or if it pertains to a basic and controlling issue.

*Mina v Gen Star Indemnity Co,* 218 Mich App 678, 680-681; 555 NW2d 1 (1996), rev'd in part on other grounds 455 Mich 866 (1997). Here, the credibility of one of defendants' key witnesses is a basic and controlling issue.

Our distinguished colleague argues in her dissent that the issue of the sealing of the court record was not preserved and that Miller is a liar. In the alternative, she asserts that even if the issue were preserved, this Court should arrive at a differing conclusion regarding the construction of the court rules in question, including MCR 8.119(F)(4). We respectfully disagree.

In denying defendants' motion for a new trial or JNOV, the trial court dismissed their argument that the transcripts from the Miller divorce were covered by the sealing order. We conclude that the transcripts from the July 1996 hearing fell within the terms of Judge Campbell's order sealing "all of the files and records . . . ." This determination requires a careful examination of the Michigan Court Rules, as we have been unable to find Michigan case law on this topic.

MCR 8.119(F) deals specifically with sealed records, providing guidelines for when a court may enter an order that seals court records. MCR 8.119(F)(4) is most relevant, and states:

> For purposes of this rule, *"court records" includes all documents and records of any nature that are filed with the clerk in connection with the action.* Nothing in this rule is intended to limit the court's authority to issue protective orders pursuant to MCR 2.302(C). [Emphasis added.]

We will next determine whether transcripts fit within this definition of "court records." The language of this rule is very broad, including the words "all" and "of any nature." A transcript could be considered a record of the proceeding that is filed with the clerk, thus placing

it in the category of court records pursuant to MCR 8.119(F). In interpreting a court rule, this Court applies the same legal principles that govern statutory interpretation. *In re KH*, 469 Mich 621, 628; 677 NW2d 800 (2004). Statutory language should be construed reasonably, keeping in mind the purpose of the act. *People v Spann*, 250 Mich App 527, 530; 655 NW2d 251 (2002), aff'd 469 Mich 904 (2003). If reasonable minds can differ concerning the meaning of a statute, judicial construction is appropriate. *People v Warren*, 462 Mich 415, 427; 615 NW2d 691 (2000). Here, reasonable minds could differ concerning whether transcripts are included within MCR 8.119(F) as part of a sealed record; thus, judicial construction is necessary.

This Court must consider the object of the statute, the harm it is designed to remedy, and apply a reasonable construction that best accomplishes the statute's purpose. *People v Adair*, 452 Mich 473, 479-480; 550 NW2d 505 (1996); *Marquis v Hartford Accident & Indemnity (After Remand)*, 444 Mich 638, 644; 513 NW2d 799 (1994); *Oberlies v Searchmont Resort, Inc*, 246 Mich App 424, 430; 633 NW2d 408 (2001); *People v Lawrence*, 246 Mich App 260, 265; 632 NW2d 156 (2001). In doing so, this Court may consider a variety of factors and apply principles of statutory construction, but should also always use common sense. *Marquis*, *supra* at 644; *Proudfoot v State Farm Mut Ins Co*, 254 Mich App 702, 708; 658 NW2d 838 (2003), rev'd in part on other grounds 469 Mich 476 (2003); *Rancour v Detroit Edison Co*, 150 Mich App 276, 285; 388 NW2d 336 (1986).

Unless defined in the statute, every word or phrase of a statute should be accorded its plain and ordinary meaning, considering the context in which the words are used. MCL 8.3a; *Robertson v DaimlerChrysler Corp*,

465 Mich 732, 748; 641 NW2d 567 (2002); *Sun Valley Foods Co v Ward*, 460 Mich 230, 237; 596 NW2d 119 (1999); *People v Lee*, 447 Mich 552, 557-558; 526 NW2d 882 (1994). Words and phrases should be read in context. *People v Vasquez*, 465 Mich 83, 89; 631 NW2d 711 (2001) (opinion by MARKMAN, J.)

However, plaintiffs urge us to look to MCR 8.119(D)(4), which states:

> The clerk shall keep in such form as may be prescribed by the court, other papers, documents, materials, and things filed with or handled by the court including but not limited to wills for safekeeping, exhibits and other discovery materials, requests for search warrants, marriage records, and administrative activities.

Plaintiffs note that transcripts are noticeably absent from this list. However, the plain language of the rule states that the list is not exclusive. A transcript could be considered a "thing filed with . . . the court" for purposes of this rule. Defendants direct our attention to other portions of the court rules that support the inclusion of transcripts as part of the record. MCR 8.108(F)(1) is part of the court rule governing court reporters and recorders and states:

> On order of the trial court, the court reporter or recorder shall make and file in the clerk's office a transcript of his or her records, in legible English, of any civil or criminal case (or any part thereof) without expense to either party; *the transcript is a part of the records in the case*. [Emphasis added.]

Additionally, MCR 8.108(D) states that a court reporter's records are part of the record of each case. Provisions must be read in the context of the entire statute so as to produce a harmonious whole. *Macomb Co Prosecutor v Murphy*, 464 Mich 149, 159; 627 NW2d 247 (2001). Seeming inconsistencies should be reconciled if

possible. *Nowell v Titan Ins Co*, 466 Mich 478, 483; 648
NW2d 157 (2002). We find that a consistent interpreta-
tion of the court rules necessitates a conclusion that
transcripts are part of the record for purposes of a
sealing order. To hold that transcripts are part of the
record under one court rule, but not another, would
only serve to introduce confusion.

Plaintiffs argue that there is a distinction, supported
by the court rules, between sealing the records of a case
and sealing the proceedings of that case. They argue
that in order to limit access to the court proceedings or
records of those proceedings, Judge Campbell would
have to have entered another order under MCR
8.116(D), which states in relevant part:

> (1) Except as otherwise provided by statute or court
> rule, a court may not limit access by the public to a court
> proceeding unless
>
> (a) a party has filed a written motion that identifies the
> specific interest to be protected, or the court *sua sponte* has
> identified a specific interest to be protected, and the court
> determines that the interest outweighs the right of access;
>
> (b) the denial of access is narrowly tailored to accommo-
> date the interest to be protected, and there is no less
> restrictive means to adequately and effectively protect the
> interest; and
>
> (c) the court states on the record the specific reasons for
> the decision to limit access to the proceeding.
>
> (2) Any person may file a motion to set aside an order
> that limits access to a court proceeding under this rule, or
> an objection to entry of such an order. MCR 2.119 governs
> the proceedings on such a motion or objection. If the court
> denies the motion or objection, the moving or objecting
> person may file an application for leave to appeal in the
> same manner as a party to the action.

No party is certain, and the record does not indicate,
whether the public was restricted from the proceedings

in the July 1996 hearing. Defendants argue that
whether the proceedings were open to the public is
not relevant to whether the transcripts were sealed.
Plaintiffs argued at the hearing on defendants' mo-
tion for JNOV or a new trial, but have not argued in
their appellate brief, that if the proceedings were
open to the public, then the transcripts should be
available to the public. Defendants refute this asser-
tion with federal case law stating that there is a
difference between access to a hearing and access to
the recording of the hearing. The fact that the
hearing is open to the public does not necessarily
mean that the recordings of the testimony given at
the open hearing must also be made available to the
public. *United States v McDougal,* 103 F3d 651, 656
(CA 8, 1996). The right of public access to court
proceedings and documents is not absolute, and the
decision whether to allow public access is within the
sound discretion of the trial court in light of the facts
and circumstances of the particular case. *Nixon v
Warner Communications, Inc,* 435 US 589, 599; 98 S
Ct 1306; 55 L Ed 2d 570 (1978). There is nothing in
MCR 8.116(D) that indicates that it is intended to
apply to transcripts of proceedings. It appears to
apply to contemporaneous access to proceedings by
members of the public. Nothing will be read into a
clear statute that is not within the manifest intention
of the Legislature as derived from the language of the
statute itself. *Omne Financial, Inc v Shacks, Inc,* 460
Mich 305, 311; 596 NW2d 591 (1999).

Defendants also note that the method by which
plaintiffs obtained the transcripts was contrary to the
court rules. Plaintiffs obtained copies of the transcripts
not from the court clerk, but from the retired court
reporter. MCR 8.108(D) provides:

> If the court reporter or recorder dies, resigns, is re-
> moved from office, or leaves the state, his or her records in
> each case must be transferred to the clerk of the court in
> which the case was tried. The clerk shall safely keep the
> records subject to the direction of the court. The records
> are a part of the record of each case and are subject to
> inspection in the same manner as other records. On order
> of the court, a transcript may be made from the records and
> filed as a part of the record in the case.

Thus, the court rule indicates that the retired court
reporter should not have been in possession of the
transcripts and should have "transferred" the tran-
scripts to be kept safely by the court clerk. Plaintiffs'
contention that they obtained the transcripts through
usual channels is not correct. If what plaintiffs' counsel
said is true, the court clerk made a mistake in giving
plaintiffs the name and phone number of the retired
court reporter.

Thus, the court rules require a conclusion that the
transcripts are part of the sealed record and that the
trial court erred in allowing the transcripts from the
Miller divorce hearing to be admitted as evidence. The
dissent's application of *Rubenstein v Purcell*, 276 Mich
433, 438-439; 267 NW 646 (1936), is misplaced. In
*Rubenstein*, defense counsel was surprised when one of
his witnesses changed his testimony. In this case, de-
fense counsel and Miller were surprised when opposing
counsel bypassed the court rules and introduced testi-
mony that was supposed to be sealed.

Looking beyond the language of the court rules,
common sense would indicate that the transcripts
should be considered part of the sealed record. Although
the specific reasons why the Miller divorce records were
sealed are unknown to this Court, divorce records are
typically sealed because they contain intensely personal
matters. The emotions involved in divorce proceedings

sometimes lead the parties to say things at trial that would, in other venues, be considered libelous. Additionally, private issues such as the mental health of the parties' children sometimes become a part of the record. If the purpose of sealing divorce proceedings is to protect the children of the divorce and to protect the parties from public scrutiny of sometimes unfounded accusations, then sealing only the paperwork from the trial and not including transcripts within the sealing order would defeat the purpose of sealing the records. Unscrupulous attorneys would have no trouble circumventing the sealing order entirely by injecting anything they wished to remain unsealed into the transcribed proceedings.

This Court is limited by the court rules and the rules of evidence in granting a new trial on the basis of an evidentiary error; any error in the admission or exclusion of evidence will not warrant appellate relief "unless refusal to take this action appears . . . inconsistent with substantial justice," MCR 2.613(A), or affects "a substantial right of the [opposing] party," MRE 103(a). A trial judge's

> failure to comply with a court rule is not per se reversible error unless it is so offensive to the maintenance of a sound judicial process that it can never be regarded as harmless or the court decides, for prophylactic reasons, to require undeviating compliance with a particular rule. Otherwise, absent prejudice suffered by the complaining party attributable to the failure to observe the rule, reversal is not appropriate." [*Moskalik v Dunn*, 392 Mich 583, 588; 221 NW2d 313 (1974).]

The trial court's error in allowing the admission of the Miller divorce transcripts was of such a magnitude as to warrant a new trial. Plaintiffs' counsel repeatedly emphasized Miller's untrustworthiness with such statements as "[i]n the five years since you lied to the Court

under oath during your divorce . . ." and "you'll say anything under oath; isn't that right?" and "[t]hat's the word of someone who admitted yesterday that you've lied under oath and you admit that you misled under oath, too, right?" This evidence was extremely damaging to defendants' case because Miller was one of their main witnesses. Had plaintiffs filed a motion to unseal the record in the underlying case, as they should have under the court rule, defendants would have had advance warning of the impeachment evidence and could have taken steps to avoid it or to minimize its effect. We find that "undeviating compliance" with orders sealing the records of another case is required. Further, maintenance of a sound judicial process would be offended by failing to remand this case for a new trial on the basis of the admission of the Miller divorce hearing transcripts. *Moskalik, supra* at 588. The dissent maintains that our decision will undoubtedly give Miller yet another opportunity to obscure the truth. This is not necessarily so. Our grant of a new trial will allow plaintiffs to pursue unsealing the record from Miller's divorce by following proper procedure. In no way do we wish our decision to be construed as condoning Miller's lies or assisting him in further propagating lies in the courts of this state; rather, our decision is based on our broader concern for the integrity of sealed records. Our remand for a new trial also requires that we vacate mediation sanctions.

Our grant of a new trial renders defendants' other evidentiary issues moot.

### III. JNOV

Defendants argue that the trial court erred in refusing to grant their motion for JNOV when there was no evidence presented on the element of damages. We agree.

### A. STANDARD OF REVIEW

In this situation, the trial court's denial of defendants' motion for JNOV should be reviewed de novo because the decision was based on an issue of law: whether plaintiffs presented a prima facie case of fraud and misrepresentation. We review a trial court's decision on a motion for JNOV de novo. *Merkur Steel Supply, Inc v Detroit,* 261 Mich App 116, 124; 680 NW2d 485 (2004). A motion for JNOV should be granted only if there is insufficient evidence to create an issue for a jury. *Id.* at 123.

### B. ANALYSIS

Plaintiffs alleged at trial that in the original business plan, defendants misrepresented the number of listeners of the radio station and misrepresented some financial statements. A claim of fraudulent misrepresentation or actionable fraud generally requires a showing that (1) the defendant made a material representation, (2) the representation was false, (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth and as a positive assertion, (4) the defendant made the representation with the intention that the plaintiff would act on it, (5) the plaintiff acted in reliance on it, and (6) the plaintiff suffered damage. *M & D, Inc v McConkey,* 231 Mich App 22, 27; 585 NW2d 33 (1998).

Further, innocent misrepresentation in the making of a contract is established when a false statement of fact, made without knowledge of its falsity or intent to deceive, is relied on by the other party to the contract to that party's detriment, resulting in the unjust enrichment of the party that made the false statement. *United*

*States Fidelity & Guaranty Co v Black,* 412 Mich 99, 115-118; 313 NW2d 77 (1981).

A review of the trial transcripts reveals that at trial, neither plaintiffs' damages expert nor any other expert gave testimony indicating that plaintiffs suffered damages as a result of defendants' misrepresentations or that defendants were unjustly enriched by the misrepresentations. This absence of proof became apparent when the jury returned a verdict in favor of plaintiffs on these claims, but did not award any damages. If the evidence fails to establish a claim as a matter of law, a motion for JNOV should be granted. *Nabozny v Pioneer State Mut Ins Co,* 233 Mich App 206, 209-210; 591 NW2d 685 (1998), rev'd on other grounds sub nom *Nabozny v Burkhardt,* 461 Mich 471 (2000).

Plaintiffs offer to stipulate a verdict that states in part, "[W]hile finding that the UAW Parties had proven their claims on this issue, [the jury] did not find that the UAW Parties had suffered any damages." This would be an incorrect statement of law. Damages are elements of both of these claims; thus, the claims could not have been proven absent damages. Therefore, we remand for entry of JNOV in favor of defendants on plaintiffs' claims of fraudulent and innocent misrepresentation.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

METER, P.J., concurred.

KELLY, J. *(concurring in part and dissenting in part).* I respectfully dissent from the majority's conclusion that the trial court erred in denying defendants' motion for a new trial. Under the circumstances presented in this case, I do not believe that the divorce transcripts

used by plaintiffs to impeach the testimony of Edward
A. Miller were part of a sealed record. In all other
respects, I concur.

During Miller's divorce proceedings, Judge Ross
Campbell issued an "Amended Opinion and Order Seal-
ing Court File and Records," stating in relevant part:

> NOW, THEREFORE, for the reasons stated, IT IS
> HEREBY ORDERED, that all of the files and records of
> this cause, including but not limited to the files and records
> of the Friend of the Court, shall be and the same hereby are
> sealed . . . .

Five years after the amended order was issued, further
hearings were conducted regarding alimony and child
support. During these hearings, Miller testified before
newly assigned Judge Kurtis T. Wilder on a number of
issues relating to his finances. In the present case,
Miller admitted that he lied under oath before Judge
Wilder about his financial situation, his departure from
the job he held before he worked at United Broadcast-
ing Network, his relationship with Helen Dorsey, and
his knowledge of Dorsey's income.

Defendants contend on appeal that they are entitled
to a new trial because the transcripts of Miller's prior
testimony should not have been used to impeach his
testimony in the present case since they were part of a
sealed record. In contrast to the majority, I agree with
plaintiffs that this issue was not preserved and should
not be reviewed. As noted by the majority, unpreserved
errors will not be reviewed by this Court unless lack of
review would result in manifest injustice. *Napier v
Jacobs*, 429 Mich 222, 233-234; 414 NW2d 862 (1987).
To preserve an evidentiary error for appellate review, a
party must object on the same ground that it presents
on appeal. *Klapp v United Ins Group Agency, Inc (On
Remand)*, 259 Mich App 467, 475; 674 NW2d

736 (2003); MRE 103(a)(1). In the trial court, defendants did not object to admission of the transcripts[1] on the basis that they were part of a sealed record; rather, they contended that the transcripts were not admissible for the purpose of impeachment because they did not impeach Miller's testimony in this case. Because defendants did not object at trial on the same ground that they present on appeal, the issue is not preserved.

The majority excuses the preservation requirement because *defense counsel* did not know that the record in Miller's divorce case was sealed. They surmise that, because defense counsel was "surprised," it was not possible for counsel to preserve this issue by properly objecting. This may be true, but, in my opinion, it is irrelevant whether defense counsel knew of the order sealing the record or Miller's prior untruthful testimony. Defense counsel is not a party to this action; Miller is. As a party, Miller either was or should have been fully aware of his prior untruthful testimony and the order sealing the file. Whether by plan or negligence, he failed to inform his trial counsel in the present case.

While a less than candid client places an attorney in a difficult position during trial, the negative consequences the party suffers as a result of his own lack of candor does not form the basis for an error requiring reversal. There is no rule of law that requires a client to disclose damaging information to his attorney. The client can choose whether to disclose this information, though it would be universally agreed that a client's choice to conceal information from his attorney is not a good one. Nonetheless, when counsel's hope for the

---

[1] The transcripts were not admitted as a whole. Plaintiffs' counsel read portions of the transcripts into the record during cross-examination of Miller.

client's full disclosure is disappointed, it is not grounds for a new trial. See *Rubenstein v Purcell*, 276 Mich 433, 438-439; 267 NW 646 (1936) (no surprise when one's own witness causes the surprise by changing testimony). As defense counsel candidly concedes, "He didn't tell us and we didn't know." Any "surprise" on the part of defense counsel was caused by his client, not opposing counsel. This is particularly true when all parties were on notice in the earliest stages of discovery that the Miller divorce was an important issue. In short, Miller himself caused his counsel to be surprised because he (1) lied under oath in a prior case about a matter relevant in this case and (2) failed to inform his attorney about his prior lies. Because error to which the aggrieved party contributed by plan or negligence cannot be error requiring reversal, *Farm Credit Services of Michigan's Heartland, PCA v Weldon*, 232 Mich App 662, 683-684; 591 NW2d 438 (1998), I would decline to address this unpreserved issue.

Even if this issue had been properly preserved, I would further agree with plaintiffs that the trial court did not err in ruling that the transcripts from the Miller divorce were not covered by the sealing order. MCR 8.119(F) provides guidelines on sealed records and, therefore, is the correct rule[2] to apply in resolving this issue. MCR 8.119(F)(4) explicitly defines what comprises a court record:

> For purposes of this rule, "court records" includes all documents and records of any nature that are *filed with the clerk in connection with the action*. Nothing in this rule is intended to limit the court's authority to issue protective orders pursuant to MCR 2.302(C). [Emphasis added.]

---

[2] The majority concedes that it is the "most relevant" rule. *Ante* at 325.

When interpreting a court rule, this Court applies the same legal principles that govern statutory interpretation. *In re KH*, 469 Mich 621, 628; 677 NW2d 800 (2004).

> When interpreting statutory language, our obligation is to ascertain the legislative intent that may reasonably be inferred from the words expressed in the statute. When the Legislature has unambiguously conveyed its intent in a statute, the statute speaks for itself, and judicial construction is not permitted. Because the proper role of the judiciary is to interpret and not write the law, courts simply lack authority to venture beyond the unambiguous text of a statute. [*Koontz v Ameritech Services, Inc*, 466 Mich 304, 312; 645 NW2d 34 (2002) (citations omitted).]

Applying these principles to the plain language of MCR 8.119(F)(4), it is clear that, in order for something to be part of the court record, three criteria must be met. The contested item must be (1) a document or record of any nature (2) filed with the clerk (3) in connection with the action. According to the unambiguous terms of MCR 8.119(F)(4), the transcript at issue is simply not part of Miller's divorce record because it was never "filed with the clerk in connection with the action." *Id.* The majority opines that the rule is ambiguous because "reasonable minds could differ concerning whether transcripts are included within MCR 8.119(F) as part of a sealed record[.]" *Ante* at 326. I disagree. Although it is true, as the majority states, that "[t]he language of this rule is very broad, including the words 'all' and 'of any nature,' " *ante* at 325, the term "court records" remains defined as only those "documents and records of any nature" that are actually "filed with the clerk in connection with the action." The transcripts at issue are not records from Miller's divorce case because they were never filed with the court clerk in the divorce or postjudgment proceedings.

Additionally, the majority's reliance on MCR 8.119(D)(4) is misplaced. That rule sets forth the duties of the court clerk, and provides:

> The clerk shall keep in such form as may be prescribed by the court, other papers, documents, materials, and things *filed with or handled by the court* including but not limited to wills for safekeeping, exhibits and other discovery materials, requests for search warrants, marriage records, and administrative activities. [Emphasis added.]

Again, the transcripts at issue were never "filed with or handled by the court . . . ." While I agree with the majority that "[a] transcript *could* be considered a 'thing filed with . . . the court' for purposes of this rule," *ante* at 327 (emphasis added), the transcripts in this case were not a "things filed with or handled by the court . . . ." MCR 8.119(D)(4) does not encompass a thing that merely has the *potential* to be filed. There is a crucial distinction between what could theoretically be considered part of a record, and what actually *is* part of the record. MCR 8.119(D)(4) does not support defendants' position that the transcripts were part of the sealed file.

The majority also erroneously relies on MCR 8.108(F)(1), which states:

> *On order of the trial court,* the court reporter or recorder shall make and file in the clerk's office a transcript of his or her records, in legible English, of any civil or criminal case (or any part thereof) without expense to either party; the transcript is a part of the records in the case. [Emphasis added.]

The plain language in this rule clearly provides that a transcript becomes part of the record when the trial court orders the court reporter to "make and file" the transcript in the court clerk's office. Here, the trial court never ordered the court reporter to "make and

file" the transcripts in the court clerk's office. Rather, plaintiffs' counsel contacted the court reporter and requested a copy of the transcripts.[3] Therefore, MCR 8.108(F)(1) also does not support defendants' position that the transcripts were part of the sealed file.

The majority also erroneously states that "MCR 8.108(D) states that a court reporter's records are part of the record of each case." *Ante* at 327. The scope of MCR 8.108 is stated in MCR 8.108(A), which provides: "This rule prescribes the duties of the court reporters and recorders, the procedure for certifying them, the effect of noncertification, objections to certification, and display requirements." MCR 8.108(D) specifically provides:

> If the court reporter or recorder dies, resigns, is removed from office, or leaves the state, his or her records in each case must be transferred to the clerk of the court in which the case was tried. The clerk shall safely keep the records subject to the direction of the court. The records are part of the record of each case and are subject to inspection in the same manner as other records. *On order of the court, a transcript may be made from the records and filed as part of the record in the case.* [Emphasis added.]

On the basis of this plain language, it is clear that a transcript may be filed as part of the record only on order of the court. In this case, the trial court in the divorce case never ordered that the transcripts be filed as part of the record. Therefore, this rule does not support defendants' position.

I disagree with the majority's reasoning and conclusion on this issue. In the face of unambiguous court

---

[3] I disagree with defendants' argument that the method by which plaintiffs obtained the transcripts was improper. It is common practice across the courts of this state for a party to order transcripts from a court reporter.

rules, the majority misapplies the rules of statutory interpretation to reverse the trial court's order denying defendants' motion for a new trial. The result is that Miller, an admitted liar under oath, will get yet another opportunity to obscure the truth, albeit this time his attorney will not be "surprised" when the transcripts are used to impeach him.